Wallace **COTTERALL**, individually and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

Brice **PAUL**, individually and as Sheriff of Coffee County, Alabama; et al., Defendants-Appellees.

No. 84–7041.

United States Court of Appeals, Eleventh Circuit.

March 19, 1985.

Robert L. Wiggins, Jr., C. Michael Quinn, Birmingham, Ala., for plaintiffs-appellants.

Joe C. Cassady, Enterprise, Ala., for defendant-appellee Brice Paul.

Warren Rowe, J.E. Sawyer, Jr., Enterprise, Ala., for all defendants-appellees except B. Paul.

Before GODBOLD, Chief Judge, ANDERSON, Circuit Judge, and THORNBERRY *, Senior Circuit Judge.

GODBOLD, Chief Judge:

Cotterall brought this action individually and on behalf of a class alleging unconstitutional conditions in the Coffee County, Alabama, jail. The district court dismissed without certifying the class. We affirm in part and reverse in part.

---

* Honorable Homer Thornberry, U.S. Circuit Judge for the Fifth Circuit, sitting by designa-

## I. Background

Cotterall sued Brice Paul, individually and as Sheriff of Coffee County, as well as the Chairman and members of the Coffee County Commission (the "county defendants") on behalf of himself and others who "are or have been incarcerated in the Coffee County jail." Cotterall was a state prisoner who had been temporarily incarcerated in Coffee County jail. The complaint, as amended, alleges violations of the First, Fifth, Eighth, and Fourteenth Amendments and seeks damages as well as declaratory and injunctive relief.

The district court, M.D. Alabama, granted defendants' motion to join as third-party defendants the Commissioner of the Alabama Department of Corrections and the Governor of the State of Alabama (the "state defendants"). When these state defendants moved for summary judgment, the court granted the motion and dismissed the case. It stated that Cotterall was an inadequate class representative "in that all convicted felons in county jails are already members of a class of plaintiffs" in *Newman v. Alabama*, 349 F.Supp. 278 (M.D. Ala.1972), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975), *Pugh v. Locke*, 406 F.Supp. 318 (M.D.Ala.1976), *modified* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), *cert. denied*, 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978), and *James v. Wallace*, 382 F.Supp. 1177 (M.D.Ala.1974). The court added that there was no showing that the attorneys in these other cases were not providing adequate representation. 2 Rec. 220.

On appeal this court found that the trial court was without power to enter summary judgment sua sponte in favor of the county defendants and reversed the order as to them. Because the county defendants had not appealed the entry of summary judgment in favor of the state defendants, that portion of the order was not disturbed. In determining whether the appeal had been timely filed, the court of appeals observed

tion.

that the entry of summary judgment had been "based on an erroneous interpretation of *Pugh v. Locke.*" *Cotterall v. Paul,* No. 83–7063, slip op. at 4 (11th Cir. Nov. 16, 1983).

On remand the county defendants moved for summary judgment, relying in part on an affidavit of John E. Nagle, Director of Classification of the Alabama Department of Corrections. The affidavit states that Cotterall had been confined in a minimum security facility in Coffee County, was transferred to the county jail on June 23, 1981 after being charged with a disciplinary infraction, and found guilty of the charges and transferred to a major prison on July 22, 1981. In addition there were two motions to intervene, one by "county or state inmates" of Coffee County jail, including Willie J. Simmons, 2 Rec. 246, the other by only "county inmates" of Coffee County jail. 2 Rec. 265.

On December 23, 1983 the district court granted the motion for summary judgment, denied the motions for intervention as moot, denied a motion for class certification as moot and dismissed the cause without prejudice. 2 Rec. 298. The court stated:

The affidavits, interrogatories, and pleadings filed in this cause establish that Wallace Cotterall, its only named Plaintiff, was a State prisoner housed only temporarily in the Coffee County jail. As a convicted State felon housed, albeit briefly, in a county facility, Cotterall's interests are represented by the plaintiff class in *Newman v. Alabama,* ... a cause which is presently pending before this Court. Since Mr. Cotterall's interests are currently represented in extensive and current litigation, this Court is of the opinion that he would not adequately represent the interests of those inmates who are detained in Coffee County on charges filed by the City or County and who are, thus, not parties to the *Newman* litigation. Additionally, the interests of these "county inmates" are presently represented by the plaintiffs in *Simmons v. Paul,* Civil Action No. 83–

V–665–S, a § 1983 action filed after this Court's dismissal of *Cotterall.* (footnotes omitted).

2 Rec. 296.

*Simmons,* a second action before the same district judge, was commenced in June 1983 by the same individuals who had filed the first motion to intervene in the *Cotterall* case. It was brought on behalf of the identical class specified in Cotterall's complaint: individuals who "are or have been incarcerated in the Coffee County Jail." On December 27, 1983 the district court entered an order granting the defendants' motion to dismiss all plaintiffs incarcerated on state charges. Jeremiah Haynes is now the named plaintiff in what was formerly the *Simmons* action. In a March 19, 1984 order the district court certified the following class in *Haynes:* all "past, present, and future non-state inmates of the Coffee County jail, whether serving a county or city jail sentence or being held for purposes other than serving a city or county sentence."

Cotterall raises three issues on appeal. He asserts that his individual claims are not moot, that the district court erred "in holding that *Pugh v. Locke* precludes challenging the conditions of confinement in the Coffee County Jail," and that the denial of the motions to intervene was error.

## II. Cotterall's individual claims

The trial court erred by granting the defendants' motion for summary judgment with respect to Cotterall's individual damage claim. His interests are not represented by the plaintiff classes in *Newman, Pugh* or *Haynes.* Nor is Cotterall's claim for damages moot. His claim for injunctive relief is, however.[1]

### A. *Newman, Pugh* and *Haynes*

*Newman* was a class action brought by and on behalf of "prisoners within the Alabama Penal System." The plaintiffs alleged inadequate medical treatment and sought declaratory and injunctive relief against the Attorney General of the State of Alabama, members of the Alabama

---

1. Cotterall does not contend that the dismissal of his claim for declaratory relief was error.

Board of Corrections, and the Warden, Administrator and staff of the Medical and Diagnostic Center, Mt. Meigs, Alabama, the general hospital for the Alabama Prison System.

*Pugh* was a class action on behalf of "all persons presently confined by the Alabama Board of Corrections" and against the Governor of Alabama, the Commissioner, Deputy Commissioner and members of the Alabama Board of Corrections, and the Wardens of Kilby Corrections Facility and G.K. Fountain Correctional Center. *Pugh* expanded the relief granted in *Newman* and established comprehensive minimum constitutional standards for "inmates of [the] Alabama Penal System.".

In November 1984 a consent order of dismissal was entered in *Newman, Pugh,* and *James.* The court relinquished jurisdiction in these cases, finding existing conditions in the "Alabama Prison System" in sufficient compliance with the requirements of the Constitution of the United States.

■ Cotterall's interests are not represented by the plaintiff classes in *Newman* and *Pugh* for two reasons. First, these suits did not seek to establish the liability of county officials. Rather they sought to establish the liability of state defendants. Second, these suits did not seek to establish liability with respect to the conditions of county jails. Instead they litigated conditions in the "Alabama Penal System." Although the Alabama Department of Corrections, (the successor of the Alabama Board of Corrections), *see* Alabama Code § 14–1–1.1 (Supp.1984), has extensive responsibility for the conditions in county jails, *see e.g.* Alabama Code § 14–1–8 (1982), the "Alabama Penal System" does not include Alabama's county jails. *See e.g. Washington v. Lee,* 263 F.Supp. 327, 332 (M.D.Ala.1966) (differentiating between "state penal facilities" and county jails). Our holding that Cotterall's interests are not represented in *Newman* and *Pugh* is confirmed by this court's conclusion, adverted to above, that the original entry of summary judgment had been "based on an erroneous interpre-

tation of *Pugh v. Locke." Cotterall, supra,* slip op. at 4.

Nor are Cotterall's interests represented in the *Haynes* litigation. Cotterall is not a member of the class certified there because he is not a "non-state inmate of the Coffee County jail."

### B. Mootness

■ Cotterall's individual damage claim could not have properly been dismissed as moot. Although, as the district court observed, Cotterall was "housed only temporarily in the Coffee County jail", the "[t]ransfer of a prisoner does not moot a claim for money damages." *McKinnon v. Talladega County,* 745 F.2d 1360, 1362 (11th Cir.1984); *Cruz v. Estelle,* 497 F.2d 496, 499 (5th Cir.1974).

■ Cotterall's individual claim for injunctive relief, however, was moot and properly dismissed. "Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury." *Dudley v. Stewart,* 724 F.2d 1493, 1494 (11th Cir. 1984); *Holland v. Purdy,* 457 F.2d 802 (5th Cir.1972). The most that can be said is that if Cotterall is again incarcerated in a minimum security facility and again charged with a disciplinary infraction, he might again be transferred to Coffee County jail. This is too speculative. *See Dudley,* 724 F.2d at 1494. Contrast *Hardwick v. Brinson,* 523 F.2d 798, 800 (5th Cir.1975) (where defendants unable to advise prisoner that he would not be returned to particular prison, case not moot because conduct complained of may recur).

### III. *Pugh* and *Newman* and the motions to intervene

■ The final two issues are bound together. It was improper to deny class certification because of *Newman* or *Pugh.* As we have already determined, Cotterall's interests were not represented in *Newman* or *Pugh.* Therefore members of the purported class who, like Cotterall, were also

state inmates did not have their interests so represented. The only remaining reason the trial court gave for refusing to certify the class was that Cotterall was not an adequate representative.[2] At the same time, the trial court denied two motions to intervene because the refusal to certify a class had rendered the motions moot. In short, the trial court refused to certify a class because there was not an adequate representative but refused to permit potentially adequate representatives to intervene because a class had not been certified. This was error.

In *White v. I.T.T.*, 718 F.2d 994 (11th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1914, 80 L.Ed.2d 462 (1984), the court faced a familiar procedural posture: a plaintiff brings both an individual and class action; the class action is dismissed pretrial; the plaintiff loses his individual claim at trial and then appeals the dismissal of the class action. The court stated that in every such case it had remanded to determine whether there was a live controversy involving the proposed class, the action was appropriate for class certification, and the appellant was an appropriate class representative "or if not, whether there exists an appropriate class representative who can be substituted for appellant." *Id.* at 998.

Likewise in *Ford v. U.S. Steel Corp.*, 638 F.2d 753, 760–62 (5th Cir.1981), the Fifth Circuit considered the trial court's decertification of a class the court had sua sponte certified over four years earlier. The fatal defect with the proposed class was that Ford was an inappropriate class representative, although motions to intervene had been denied. Under the "unusual procedural history" of the case[3] the court ruled that if on remand the district court determined that there was a live controversy involving the class, it "has the responsibility of determining who is an appropriate representative." *See also Armour v. City*

of *Anniston,* 622 F.2d 1226 (5th Cir.1980). *Cf. United States Parole Commission v. Geraghty,* 445 U.S. 388, 407, 100 S.Ct. 1202, 1214, 63 L.Ed.2d 479 (1980); *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1044–45 (5th Cir.1981) (Unit A).

We do not decide whether or not the denial of the motions to intervene was error under the standards normally observed by this court. *See, e.g., Athens Lumber Co., Inc. v. Federal Election Commission,* 690 F.2d 1364 (11th Cir.1982); *U.S. v. Marion County School District,* 590 F.2d 146 (5th Cir.1979). Nor do we decide whether the denial of class certification was necessarily error. It may be that there was not a live controversy involving the class or that neither Cotterall nor the intervenors were adequate class representatives. We do rule that it was error to deny the motion for class certification on the ground that the named plaintiff was an inadequate class representative without first making a specific finding that the would-be intervenors would be inadequate representatives as well.

REVERSED in part, AFFIRMED in part, and REMANDED.

---

2. Cotterall does not contest this on appeal.

3. In view of the sua sponte certification and decertification some four years later, the court emphasized, "the task of the district court on

remand is not one which courts must always undertake when confronted with potential class actions." *Ford,* 638 F.2d at 762.