[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 02-15379

_____

D.C. Docket No. 99-02294-CV-J-S

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 23, 2003
THOMAS K. KAHN
CLERK

BIRMINGHAM STEEL CORPORATION,
on behalf of itself and all others
similarly situated,

Plaintiff-Appellant,

versus

TENNESSEE VALLEY AUTHORITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(December 23, 2003)**

Before EDMONDSON, Chief Judge, CARNES, Circuit Judge, and CARNES[*],
District Judge.

_____

[*] Honorable Julie E. Carnes, United States District Judge for the Northern District of
Georgia, sitting by designation.

CARNES, District Judge:

This appeal stems from the decertification of a class action lawsuit against defendant Tennessee Valley Authority ("TVA") after the class representative filed for bankruptcy. The district court granted defendant's motion to decertify the class because it concluded that the named plaintiff, Birmingham Steel Corporation ("Birmingham Steel"), had become an inadequate class representative, that class counsel had failed to request the substitution of a class representative, and that no other member of the class was willing to serve in that role. Plaintiff Birmingham Steel appeals the district court's decertification of the class, arguing that the court should have allowed a reasonable time for a class member to intervene or be substituted as the new class representative.

We conclude that the district court abused its discretion by decertifying the class without permitting class counsel reasonable time to determine whether a new class representative could be substituted. We therefore remand the case to the district court for the purpose of allowing a reasonable period of time for another member of the class to offer itself as the class representative.

## I.    Factual and Procedural Background

As the underlying proceedings in this case are pivotal to an understanding and resolution of this dispute, we will address them in some detail here. Plaintiff

Birmingham Steel brought this case as a class action on behalf of a group of approximately 400 large-volume industrial consumers of electrical power who had Economy Surplus Power ("ESP") contracts with TVA. Birmingham Steel alleged that TVA had overcharged for power during the summer of 1998 and thus had breached the ESP contracts. Pursuant to Federal Rule of Civil Procedure 23(b)(3),[1] the district court certified the case as a class action, with Birmingham Steel as the class representative, on December 5, 2000. At the suggestion of both parties, the district court endorsed a bifurcated trial plan, whereby a trial would first be held on the issue of liability; a second trial to determine damages would be scheduled only if the defendant was found liable in the first trial. On September 28, 2001, the court set this liability trial to begin approximately one year later, on September 30, 2002. On this same date, the district court approved the Notice of Class Action to be sent to potential class members, which Notice directed members who wished to be excluded from the class to file an opt-out form with the court no later than December 14, 2001. Of significance to later events in this case, the Notice, which was drafted by class counsel, states specifically that "[y]ou

---

[1] Federal Rule of Civil Procedure 23 was amended effective December 1, 2003. The district court's certification of the class was made pursuant to the version of the rule in effect prior to this recent amendment. Likewise, the parties' briefs and this Court's discussion of Rule 23 reference the pre-Amendment Rule 23. In any event, none of the amended provisions of the Rule would alter the reasoning or outcome of this Court's decision.

are not included in this class if you are in bankruptcy."

Pretrial matters proceeded uneventfully until June 14, 2002, when defendant TVA, having learned that Birmingham Steel had filed a petition for Chapter 11 bankruptcy approximately two weeks before, alerted the district court to that fact and moved the court to decertify the class. In support of this motion, TVA argued that, as a company in bankruptcy, Birmingham Steel was no longer a member of the class and therefore could not serve as the class representative. In the alternative, TVA requested the entry of an order staying the proceedings until a substitute class representative could be certified or the class representation issue could be decided. Birmingham Steel opposed decertification, arguing that the class definition did not exclude bankrupt companies, albeit the class notice did, and that, in any event, the district court should amend the class definition to allow bankrupt companies such as Birmingham Steel to remain in the class. With regard to TVA's argument that Birmingham Steel could not serve as a representative, given that its assets would soon be transferred to a liquidation trustee and the company would cease to exist, Birmingham Steel disagreed with TVA's characterization of the effect or the timing of the proposed reorganization plan.

The district court denied defendant's motion to stay proceedings, but did set down a hearing on the motion for August 22, 2002. Much of this hearing revolved

4

around the many legal and practical problems that would be engendered by Birmingham Steel's continuation as a representative plaintiff, in view of its bankruptcy status.  Central to this discussion was the question whether a bankrupt company controlled by a liquidator could adequately serve as a class representative.  The district court also expressed concern about what type of new notice and opt-out period would be required, were the court amenable to redefining the class to include bankrupt entities and to allowing Birmingham Steel to remain as the representative plaintiff.

Toward the conclusion of the hearing, the court inquired about the possibility of finding a substitute class representative, should Birmingham Steel be excluded.  Class counsel replied that it would be "some trouble" to find another representative because most of the class members were current customers of TVA who regularly negotiated new power contracts and who therefore would likely be unwilling to undermine their ongoing business relationships with TVA.  Class counsel also noted that substituting a new class representative would necessitate more discovery and therefore force the postponement of the trial date.  In short, class counsel expressed the view that a search for a new representative was "unnecessary" and would cause "serious trouble."  Nevertheless, counsel did indicate to the district court that, should it decide that Birmingham Steel could no

5

longer serve as the class representative, the law would require that counsel be given a reasonable period of time to substitute a new representative: a proposition with which the court concurred.

In contrast, defendant TVA took the position that a new representative was not an option, but a necessity, under these circumstances. Moreover, TVA opposed, as inappropriate, any efforts by class counsel to "beat the bushes begging" for a new representative to step forth, but instead urged the court to require any such volunteer to contact the court directly.

Thereafter, on September 19, 2002, the district court issued an order granting TVA's motion to decertify the class. The court rejected Birmingham Steel's argument that, as a bankrupt entity, it was still properly within the definition of a class member, and the court further declined to amend the class notice to expand this definition to cover bankrupt companies. Accordingly, the court reasoned that, as it was no longer a member of the class, Birmingham Steel could not serve as the class representative. With regard to the substitution of another class member into the representative spot, the court indicated: "No Party has asked this court to allow another class member to act as class representative." The court subsequently reiterated this point when, in distinguishing cases in which substitution had occurred after the original class representative ceased its

membership in the class, the court noted: "No motion to substitute has ever been placed before this court." Finally, having decertified the action, the court indicated that class members were now free to bring their own individual breach of contract cases, if they saw fit.

Shortly thereafter, on September 25, 2002, class counsel filed a Motion to Stay and Alter or Amend One Aspect of the September 19, 2002 Order That Decertified Class. In that pleading, class counsel did not quarrel with the district court's decision that Birmingham Steel was no longer a member of the class and, consequently, could not act as class representative. Rather, counsel asked only that the court amend its order to delay decertification until absent class members were notified and given an opportunity to substitute one of their number as the class representative. Counsel conceded that if no volunteer stepped forward, the class should then be decertified.

The district court held argument on this motion and thereafter issued an order denying class counsel's motion to suspend decertification until notice could be given to the class. The court repeated its observation that, at the time of its earlier ruling, plaintiff had never filed a motion to substitute a class

representative.[2]  Moreover, the court noted that, prior to its ruling decertifying the class,  class counsel had repeatedly emphasized how slim were the chances that a new representative could be found.  Accordingly, the court denied class counsel's motion to amend its earlier order, meaning that the class action remained decertified.  Subsequently, the court also granted TVA's motion to dismiss Birmingham Steel's individual action, a decision that plaintiff does not appeal.

## II.    Standard of Review

Questions concerning class certification are left to the sound discretion of the district court.  *Forehand v. Florida State Hosp. at Chattahoochee*, 89 F.3d 1562, 1566 (11th Cir. 1996) (quoting *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.), *cert. denied*, 479 U.S. 883, 107 S. Ct. 274 (1986)).  We review orders denying class certification for abuse of discretion.  *Wooden v. Bd. of Regents of the Univ. Sys. of Georgia*, 247 F.3d 1262, 1271 (11th Cir. 2001) (citing *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000)).  Logically, we also review orders decertifying a class for abuse of discretion as well.  *Johnson v. Bd. of Regents of the Univ. of Georgia*, 263 F.3d 1234, 1243 (11th Cir. 2001).

---

[2] "First, at the time the court considered the defendant's motion to decertify, no motion to substitute the class representative was before the court.  Therefore, the court could either grant or deny the motion to decertify.  Neither of these options include the court *sua sponte* ordering the plaintiff to find a new class representative.  However, plaintiff now argues that this court is in error for not granting such relief." [R.3:109:3-4] (footnote omitted).

8

*See also Pederson v. Louisiana State Univ.*, 213 F.3d 858, 866 (5th Cir. 2000) (holding that the decision to decertify a class is a class certification decision and as such is reviewed for abuse of discretion); *Barnes v. American Tobacco Co.*, 161 F.3d 127, 138 (3d Cir. 1998) (holding that the decision of a district court to decertify a class should be reviewed for an abuse of discretion). This Court has stated that "[a]n abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or ... [makes] findings of fact that are clearly erroneous." *Mincey v. Head*, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000) (quoting *In re Red Carpet Corp. of Panama City Beach*, 902 F.2d 883, 890 (11th Cir. 1990)).

## III. Discussion

### A. Case Authority

Plaintiff Birmingham Steel argues that the district court abused its discretion by decertifying the class without first allowing a reasonable time for substitution or intervention by other class members. Plaintiff contends that the case law of this Circuit supports its position and notes that this Circuit has never upheld a decertification by a district court, based on the inadequacy of the class representative, when the trial court has refused to give the class an opportunity to substitute a new class representative. Defendant TVA counters that Rule 23

nowhere requires a district court to allow an opportunity for the substitution of a new class representative, prior to decertifying a class. Moreover, defendant contends that the cases on which plaintiff relies are distinguishable from this case. To evaluate the respective positions of each party, the Court will address, in turn, each of the three cases on which plaintiff most heavily relies, followed by defendant's two strongest cases.

Plaintiff's best case is *Lynch v. Baxley*, 651 F.2d 387 (5th Cir. Unit B July 1981).[3] *Lynch* was a class action challenging the constitutionality of Alabama civil commitment procedures applicable to individuals who were involuntarily committed to mental health facilities. After certification of the class, the Alabama legislature repealed the statutes at issue and enacted new statutes that deprived the named class representatives of standing to represent any new class that might be formed in response to the new legislation. Thereafter, given the absence of standing by the named plaintiffs, the district court dismissed the class action without prejudice. *Id.* at 387-88.

The plaintiffs appealed this dismissal, and the former Fifth Circuit reversed and remanded. Citing the Supreme Court's decision in *Sosna v. Iowa,* 419 U.S.

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

393, 399, 95 S.Ct. 553, 557 (1975), the court noted that, once certified, a class acquires a legal status separate from that of the named plaintiffs. 651 F.2d at 388. Accordingly, while a loss of standing might justify dismissal of the named plaintiff as a representative, it did not necessarily call for the simultaneous dismissal of the class action, if members of that class might still have live claims. Rather, the former Fifth Circuit held that, under the circumstances before it, the district court erred in dismissing the case without first giving an opportunity for the intervention of a newly named plaintiff who would have standing to pursue the action. *Id.* The only circumstance specifically identified by the panel was the fact that discovery had been ongoing for a two year period and, therefore, dismissal of the action "rendered useless" this discovery. *Id.* at 388 n.1. As a result, the court reasoned that "[e]fficient judicial administration weighs in favor of allowing an opportunity for a new and proper class representative to enter the case and litigate the interests of the subclass." *Id.* at 388.

In *Cotterall v. Paul*, 755 F.2d 777 (11th Cir. 1985), plaintiff Cotterall had filed a class action challenging the conditions of confinement in an Alabama county jail. The district court refused to certify the class, in part, because Cotterall was not an adequate representative. *Id.* at 781. Yet, at the same time it rendered this ruling, the court had pending two motions to intervene by putatively adequate

11

representatives, which intervention motions it denied as moot because it had refused to certify the class. *Id.* This Court reversed, holding that it was error for the district court to deny class certification "on the ground that the named plaintiff was an inadequate class representative without first making a specific finding that the would-be intervenors would be inadequate representatives as well." *Id.*

Finally, plaintiff also relies upon *Ford v. United States Steel Corp.*, 638 F.2d 753 (5th Cir. Mar. 1981). In that case, the district court decertified a class that it had *sua sponte* certified over four years earlier. *Id.* at 754. One basis for the decertification was the inadequacy of the named class representative. *Id.* at 757. Upon decertification, however, several individuals filed motions to intervene, which motions the district court denied. *Id.* at 758. The former Fifth Circuit reversed and remanded the case to the district court for the latter to determine, among other things, whether a live controversy still existed and, if so, "to substitute an appropriate class representative should one desire to be appointed." *Id.* at 762. Although the complexity and "convoluted history" of the case, *id.* at 754, make it difficult to derive precise principles that could be readily applied in dissimilar factual scenarios, it bears noting that the former Fifth Circuit indicated that the district court's earlier certification of the class could have triggered reliance among members of the class, such that the decertification

12

could have created an injustice. *Id.* at 760. Moreover, the panel indicated that the interest of other members of the class in representing that class was also a factor the district court should have considered prior to decertifying the class. *Id.* Finally, however, the former Fifth Circuit did qualify the general applicability of its holding by acknowledging that the tasks it had assigned the district court on remand--including the duty to substitute an appropriate class representative, if one so volunteered--were not tasks that "courts must always undertake when confronted with potential class actions." *Id.* at 762. Rather, "[t]he unusual procedural history . . . of this case . . . dictates further consideration to ensure that those, if any, who are entitled to relief receive it." *Id.*

In support of its position, defendant argues that the above cases are factually distinguishable. Defendant further cites, as persuasive authority, two other cases from outside this Circuit. In *Payne v. Travenol Labs., Inc.*, 673 F.2d 798 (5th Cir. 1982), as a result of an amendment to add a sex discrimination claim to a class complaint that had originally alleged only a race discrimination claim, an inherent conflict arose between the interests of black female and black male members of the class, necessitating the creation of two subclasses to represent the two groups. *Id.* at 807-09. As the only black male named plaintiff had earlier withdrawn from the case, however, there was no black male to represent such a subclass. *Id.*

13

at 812.   Accordingly, the plaintiffs contended that the district court had a duty to send a notice to all black males "to allow one of them to step forward to intervene." *Id.* Plaintiffs appealed after the district court refused to send this notice.

The Fifth Circuit concluded that it could find no such obligation in the law. *Id.* In so holding, the court noted that Rule 23 requires a district court to give notice to the class of developments in the case in only two situations: (1) when the court certifies a Rule 23(b)(3) class, per Rule 23(c)(2), and (2) when the class action is about to be dismissed or compromised, per Rule 23(e). As the plaintiffs had not argued that the redefinition of the class constituted a dismissal of the class action, the Fifth Circuit concluded that the district court had no duty to "recruit" a new black male plaintiff to intervene in the case. *Id.* Otherwise, the court reasoned, whenever a district court decertified a class upon concluding that the class representative was inadequate, the court would have to send out a notice soliciting a new class representative:

> Were we to accept [plaintiff's] reasoning, a district court that provisionally certified a class but later concluded that the existing class representative was inadequate would have to send notice soliciting a new class representative. Plainly, this is not the rule in this circuit . . . nor should it be . . . . The rule that [plaintiff] proposes would shift a burden onto the district court that properly remains with the plaintiff.

14

*Id.* at 813 (internal citation and footnote omitted). Indeed, the Fifth Circuit concluded that a district court's recruitment of black males "would constitute the stimulation of a new law suit by the court rather than a continuation of the old."[4] *Id.*

Second, defendant relies on a recent Seventh Circuit decision, *Culver v. City of Milwaukee*, 277 F.3d 908 (7th Cir. 2002). In *Culver*, the district court had certified a class in an action brought on behalf of white males who claimed to have been discriminated against in hiring by the Milwaukee police department. The district court originally certified a class consisting of both white males who had unsuccessfully applied for positions and white males who had not been allowed to apply for positions. *Id.* at 910. Six years later, the district court granted the City's motion to decertify the class because the class improperly included two mutually exclusive groups of claimants, and Culver was an inadequate representative of the group to which he belonged; the judge then dismissed Culver's individual claim as being moot. *Id.* at 910-11.

The plaintiff appealed the district court's decertification of the class.

---

[4] The opinion left open the possibility that had black males relied to their detriment on their provisional inclusion in a class, the district court might have arguably abused its discretion if it had not ensured that this group received notification of its impending exclusion. *Payne v. Travenol Labs, Inc.,* 673 F.2d 798, 813 (5th Cir. 1982).

Although noting that the district court could have divided the class into two subclasses, instead of outright decertifying the class, the Seventh Circuit held that, under the particular facts of the case, the district court had no obligation to so act. The court noted that Culver was clearly an inadequate representative because, in eight years of litigation, he had yet to identify any member of the class other than himself or to otherwise move the case forward. *Id.* at 912. As to the ability to substitute another person as the representative plaintiff for either subclass, the court noted that the "lackadaisical" lawyer for the class should have lined up another class member to take Culver's place in the event the appellate court ordered recertification, but that she had failed to do so. *Id.* Further, the Seventh Circuit considered the refusal of the class counsel to cooperate in the district court's efforts to divide the class into subclasses as a sufficient independent ground for concluding that the plaintiff was an inadequate representative of the class, as "the performance of the class lawyer is inseparable from that of the class representative." *Id.* at 913. In short, the Seventh Circuit concluded that the district court did not err in decertifying the class.

The Seventh Circuit nevertheless held that the district court's failure to notify the class of its decertification order was error that required a remand to allow the district court to correct its omission. *Id.* at 913-15. Citing Rule 23(e),

16

which requires that class members be notified of the proposed dismissal or compromise of an action, the panel noted that although a primary purpose behind this requirement is to protect the class against a proposed settlement agreement in which the class counsel may be "selling out the class," another important purpose is to alert the class that the statute of limitations for any individual claims, which was tolled upon the motion for class certification, will begin running again upon the dismissal of the action; absent such notification, members of the class might "find themselves time barred without knowing it." *Id.* at 914. Although acknowledging that decertification of a class is not the same thing as dismissal of the action, the court noted that decertification restarts the running of the statute of limitations in the same way as would dismissal. Hence, it concluded that the court should notify the class members of the decertification. *Id.* at 915.

Upon careful review of the above authority, we adopt the following principles that we have extrapolated from these cases. A district court that is about to decertify a class on the ground of inadequate representation by the named plaintiff will, except in extraordinary circumstances, not be required to take on itself the responsibility of notifying the class members of the imminent decertification in order to allow these members an opportunity to intervene or substitute themselves as the class representative; this is the job of class counsel or

the class representative. Accordingly, on remand, the district court will not be required to notify the class of its impending decertification. Yet, we are also persuaded by the reasoning in *Culver* that, once a district court has decertified a class, it must ensure that notification of this action be sent to the class members, in order that the latter can be alerted that the statute of limitations has begun to run again on their individual claims. Accordingly, if, on remand, the district court again decertifies the class, the court must see that timely notification of decertification is sent to the class.

We still must resolve the central dispute in this appeal, however, which is whether the district court was required to allow class counsel and the class a reasonable period of time to find a new class representative, prior to decertifying the class. In answering this question, we find *Lynch* to provide the most apt guidance on this matter. Again, as noted, the former Fifth Circuit recognized in *Lynch* that a class has a legal status separate from the named plaintiff and accordingly held that the district court had erred in summarily decertifying a class when the class representative had become inadequate, without first giving other members of the class an opportunity to substitute themselves as the class representative. In support of its holding, the panel noted that the efficient administration of justice required that such an opportunity be given as otherwise

18

the two years spent conducting discovery would be rendered useless by the decertification of the class. Similarly, in this case, the parties had completed discovery, had litigated numerous pretrial motions, and were on the eve of trial when the named plaintiff, Birmingham Steel, became an inadequate representative. Accordingly, absent some special circumstance that would take this case out of the reach of the holding in *Lynch*, the latter case would indicate that the district court here erred by not giving counsel an opportunity to seek a new named plaintiff. Defendant and the district court have asserted that such distinguishing circumstances exist, and it is to this contention that we now turn our attention.

### B. Basis of District Court's Refusal to Allow Time for a New Class Representative to be Substituted

In the present case, the district court decertified the class on the ground that the named plaintiff inadequately represented the class, and the court did so without first giving class counsel the opportunity to try to find a member of the class who would be willing to act as the class representative, although counsel had requested such an opportunity. The court indicated that it did not allow class counsel this opportunity (1) because no party had asked the court to allow another class member to act as class representative and, consequently, the court could not rule on a motion that had never been made; (2) because, given class counsel's assertion

that it would be difficult to find a member of the class that would be willing to challenge defendant TVA, it appeared very unlikely that any member of the class would be willing to intervene as a class representative; and (3) because class members would suffer no prejudice from this decertification, as they could still litigate their actions individually.

We conclude that the third ground constitutes an insufficient basis for refusing to allow class counsel time to locate an appropriate substitute representative. The same argument would have been applicable in *Lynch* and *Ford,* yet the former Fifth Circuit nevertheless concluded that the respective district courts erred in those cases by not allowing class members an opportunity to intervene prior to decertification. We are bound by those decisions and likewise conclude that the ability of the class members to bring their own individual actions does not decide the question of whether a district court errs when it refuses to allow class counsel time to locate a substitute class representative, prior to decertification.

The first two grounds for the district court's decision, however, are not implicated in the cases discussed above, and we must therefore determine the appropriateness of the district court's decision in a legal context not present in those cited cases. To do so, we must delve again into the proceedings leading up

to the order decertifying the class. The record before this Court suggests that the district court believed that class counsel had sandbagged it by arguing strenuously that the court should reject defendant's argument that the class representative should be replaced with a substitute representative, only to make that very same request once the district court had decided that Birmingham Steel was, in fact, an inadequate representative. Amplifying the court's apparent sense that class counsel was switching arguments after earlier committing itself to a contrary position was counsel's assertion, in response to the court's inquiry at the August 22nd hearing, that he would have great difficulty in finding a class member who would be willing to act as a representative. Indeed, defendant now argues that class counsel's change of position triggers application of the "invited error" principle[5] or constitutes judicial estoppel.[6] Without launching into a lengthy discussion of what conduct is necessary to trigger invocation of these legal

---

[5] "It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." *Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1293-94 (11th Cir. 2002), *cert. denied*, 537 U.S. 1147, 123 S. Ct. 868 (2003) (quoting *United States v. Ross*, 131 F.3d 970, 988 (11th Cir. 1997)).

[6] "Judicial estoppel" is an equitable doctrine that protects the integrity of the judicial process "by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine,* 532 U.S. 742, 749-50, 121 S. Ct. 1808, 1814 (2001) (internal citations and quotations omitted). In the Eleventh Circuit, the inconsistent positions must have been made under oath and must have been calculated to make a mockery of the judicial system. *Salomon Smith Barney, Inc. v. Harvey,* 260 F.3d 1302, 1308 (11th Cir. 2001), *vacated on other grounds*, 537 U.S. 1085, 123 S. Ct. 718 (2002) (citing *Taylor v. Food World, Inc.*, 133 F.3d 1419, 1422 (11th Cir. 1998)) (additional citations omitted).

21

principles, suffice it to say that defendant argues that, given class counsel's initial contradictory position during the proceedings at issue, plaintiff waived its right to now argue that the court erred by not doing what plaintiff had initially opposed: staying the action to allow an opportunity to find another class representative.

This Court has carefully reviewed the record, admittedly with the luxury of a less hurried pace than was available to the district court during the fast-moving proceedings on the eve of the trial date. That review causes us to conclude that, while substitution was clearly not class counsel's first choice of action, he did not take a contradictory position during the pivotal proceedings, such that he should be deprived of the ability to argue that the district court erred in its ultimate decision not to allow a reasonable period of time for another member of the class to be substituted as the class representative. As noted *supra*, defendant contended that Birmingham Steel was an inadequate representative and sought to stay the proceedings in order that plaintiff could seek a new representative party.[7] Plaintiff, however, vigorously contended that Birmingham Steel could still serve as a class representative, notwithstanding its pending bankruptcy and ultimate

---

[7] Although defendant's motion was styled, "Motion To Decertify Class Action Or, In The Alternative, To Stay Proceedings," defendant never took the position that the class should be immediately decertified without first giving plaintiff an opportunity to find a substitute representative, if such existed.

22

liquidation. Prior to decertification, class counsel's efforts were clearly focused on persuading the court on this point. In its response to defendant's motion, plaintiff confined its discussion to arguments intended to convince the district court that no substitution of representatives was necessary; plaintiff never addressed what should happen were the district court to reject its position.[8] Moreover, at the August 22nd hearing on defendant's motion, counsel for defendant did not request an immediate decertification, but instead indicated that the district court should allow a notice to be sent to class members, alerting them to the absence of a class representative and allowing one of their number to assume this duty. Finally, at that same hearing, in response to the district court's observation that, upon decertification, class members would be able to file individual actions, class counsel made clear his position that the law required that the class be given time to substitute a representative, should the court so rule:

> Mr. McKee: If the named class representative in a class action becomes unable to continue to serve, say an individual dies, for example, the law is that the plaintiff or plaintiff's counsel is to be given a reasonable time to substitute a new member.
>
> The Court: Absolutely.

---

[8] It bears noting that, although plaintiff ultimately failed to persuade the district court that Birmingham Steel remained an adequate representative, the district court, at the outset, clearly considered plaintiff's argument to have some potential for success. Thus, we cannot characterize plaintiff's ultimately unsuccessful contention as frivolous or taken for the purpose of delay.

Accordingly, we conclude that class counsel did not mislead the district court as to his position regarding substitution should the court ultimately decertify the class, but instead alerted the court to the position that counsel would take in that event. Therefore, plaintiff is not estopped from arguing that the district court should have allowed a reasonable time for substitution.

Similarly, as to plaintiff's failure to file a motion to substitute prior to decertification, we conclude that given the posture of the proceedings, class counsel could have reasonably inferred that no such motion was necessary prior to a decision on defendant's decertification motion. Moreover, given defendant's objection to any efforts by class counsel to locate a substitute representative on his own, class counsel argues that he was therefore reluctant to launch his own search for a new substitute. While there may have been no motion to substitute a particular party, there was clearly a motion to stay proceedings to allow substitution of a new representative. In fact, it was defendant who filed this motion and advanced this request at the hearing; as noted, plaintiff agreed that a stay would be necessary if the court deemed Birmingham Steel an inadequate representative, and the district court concurred with this particular assessment by plaintiff.

Finally, the district court based its decision not to allow time for the

substitution of a new class representative on its conclusion that any attempt to find such a substitute would be futile and would delay resolution of a case that had been pending for over three years. The court arrived at this conclusion as a result of class counsel's consistently pessimistic appraisal of the likelihood of finding a class member who would be willing to serve as a representative. Given the extreme time constraints and case loads of most district courts, we are sensitive to their need to manage efficiently their dockets. Accordingly, we sympathize with the frustration of the district court as to any further delay of a trial that had been specially set for over a year, particularly when the potential for class counsel to interest anyone else in serving as the class representative seemed unpromising.[9] Nevertheless, that counsel was pessimistic does not necessarily mean that he would have been unable to interest another member of the class in serving as the representative.[10]

---

[9] Again, with the clarity that hindsight often brings, a dual track, in which class counsel was locating a new representative at the same time that the court and parties were litigating the motion to decertify, might have saved the trial date.

[10] Although the *Culver* court considered the likely futility of finding a new class representative to be a factor justifying the district court's immediate decertification of the class, the facts were more extreme in that case than in the case before us. Specifically, Culver had never identified a single other member of the class in the six years since certification. Moreover, Culver's class counsel had litigated the case in a "lackadaisical" manner and had refused to cooperate with the district court in creating subclasses. *Culver v. City of Milwaukee*, 277 F.3d 908, 912 (7th Cir. 2002). Here, in contrast, class counsel had helped to create a class of about 400 members; he appears to have been diligently litigating the case, as the case was on the eve of trial; and, while he disagreed with the need to find a substitute representative, he did not oppose,

25

In short, we conclude that the grounds articulated by the district court do not adequately support its refusal to allow time for class counsel to locate a new class representative. As discovery had been completed, numerous pretrial motions had been resolved, and the case was ready for trial, we conclude that, as in *Lynch,* the efficient administration of justice and the interests of the class were not served when the district court decertified the class without first giving class members an opportunity to intervene as the class representative. Accordingly, we find an abuse of discretion and remand for the district court to allow a reasonable period of time for the substitution or intervention of a new class representative.[11]

but rather endorsed, this endeavor, should it become necessary.

[11] We likewise deny defendant TVA's Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed in this Court on the eve of oral argument, purportedly as the result of a newly issued case out of the Eighth Circuit. Defendant relies on a line of authority involving plaintiffs who have settled their claims and who then seek to appeal the denial of class certification. This class was certified, however, before the decision by the district court now being appealed: its refusal to allow time for class members to be substituted for the inadequate class representative. As noted, once certified, a class acquires a legal status separate from that of the named plaintiffs. *Sosna v. Iowa*, 419 U.S. 393, 399, 95 S.Ct. 553, 557 (1975). Moreover, we conclude that *Lynch, supra,* controls the motion to dismiss. As noted *supra,* in *Lynch,* the former Fifth Circuit reversed a district court's decision to decertify the class on the ground of the newly discovered inadequacy of its named plaintiff without giving the class an opportunity to substitute one of its members as the class representative. The panel remanded the action for the district court to permit time for the intervention of a new plaintiff. There is no indication in *Lynch* that the named plaintiff was contesting the district court's decision that he was inadequate nor arguing that he should be allowed to remain the class representative on remand. *See Pederson v. Louisiana State Univ.*, 213 F.3d 858, 866 n.6 (5th Cir. 2000) (despite alleged mootness of the named plaintiff's claim, the latter is the proper party to contest the district court's decertification decision). *See also Johnson v. Bd. of Regents of the Univ. of Georgia*, 263 F.3d 1234, 1268 n.30 (11th Cir. 2001) (citing *Sosna,* 419 U.S. at 399-40, 95 S. Ct. at 557) ("if a plaintiff had standing at the time of the complaint and at the time a class [wa]s certified, subsequent events that may

26

## IV. Conclusion

We therefore VACATE the district court's order decertifying the case and REMAND this case to the district court to allow a reasonable period of time for a member of the class to intervene or to be substituted as the class representative. If, at the end of that period, no adequate representative has appeared, the district court may again decertify the action.[12]

VACATED AND REMANDED.

---

moot [its] own claim . . . do not necessarily defeat [its] ability to continue to represent a class whose members still have live claims").

[12] As noted *supra*, we do not require the district court, itself, to notify the class of that court's determination that the named plaintiff is no longer adequate. If the court eventually decertifies the action, however, it must cause notice to be sent to the class in order that the latter will be made aware that the statute of limitations, tolled during the class action, has begun running upon the decertification of the class. *See Culver v. City of Milwaukee*, 277 F.3d 908, 913-14 (7th Cir. 2002).