[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10777

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DAVID JOHN RIDLING,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:19-cr-00243-PGB-EJK-1

_____

Before WILSON, BRANCH, and LAGOA, Circuit Judges.

PER CURIAM:

Defendant-Appellant David Ridling challenges his 180-month sentence for wire fraud, bank fraud, money laundering, and aggravated identity theft. The district court applied a 22-level increase to Ridling's offense level based on a finding that Ridling intended to cause victims a loss of more than $52 million. In calculating the intended loss amount, the district court equated "indifference or reckless disregard" to intent. Intended loss, however, refers only to losses the defendant purposely inflicted. The district court thus erred in applying a recklessness standard to determine the amount of loss. Accordingly, we vacate and remand for resentencing.

I

We assume the parties are familiar with the facts and procedural history of this case. To summarize, Ridling is a 60-year-old farmer from Vero Beach, Florida. Between 2016 and 2019, he defrauded a number of lenders. To gain access to loans and lines of credit, Ridling lied about his assets and fabricated documents, including tax returns and account statements. He also set up fake email accounts to impersonate Charles Schwab account representatives. He then used the loans and lines of credit for farming machinery, farmland, two trucks (one of them customized), and a trailer. Occasionally, Ridling also used funds from one loan to pay off another loan.

A federal grand jury charged Ridling with wire fraud, in violation of 18 U.S.C. § 1343 (Counts 1–10), bank fraud, in violation of 18 U.S.C. § 1344 (Counts 11–14), money laundering, in violation of 18 U.S.C. § 1957 (Counts 15–22), and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts 23–24). Without a written plea agreement, Ridling pleaded guilty.

A presentence investigation report (PSI) calculated Ridling's initial base offense level for Counts 1–22 as 7, but a 24-level enhancement applied because of the loss amount. Under the Sentencing Guidelines, loss is calculated as the greater of actual loss or intended loss. U.S.S.G. § 2B1.1, cmt. n.3(A). The PSI listed intended loss as approximately $69.9 million.

Ridling objected. He argued first that the $69.9 million intended-loss figure was incorrectly calculated and that, based on the numbers identified in the PSI, the correct calculation was just over $52.7 million. Second, he pointed out that intended loss is the "pecuniary harm that the defendant purposely sought to inflict." *Id.* § 2B1.1, cmt. n.3(A)(ii). According to Ridling, he did not purposely harm anyone; he intended to repay the loans he took out and, in fact, he did repay some of the loans. As a result, he urged the court to sentence him based on actual loss, which he said was $10.8 or $16.8 million. The lower loss amount would have translated to a less severe increase in his offense level.

The Probation Office rejected the argument that Ridling should be sentenced based on actual loss, but it issued an updated PSI listing the intended loss as $52,719,192.89. That figure included

loans Ridling applied for but never received, and lines of credit he was approved for but never used.  With a total intended loss amount of roughly $52.7 million, Ridling fell within the scope of U.S.S.G. § 2B1.1(b)(1)(L), which requires a 22-level increase for losses between $25 and $65 million.  Next, the PSI added two levels because the offense involved sophisticated means, two levels because Ridling derived more than $1 million in gross receipts from one or more financial institutions as a result of the offense, and one level because Ridling was convicted under 18 U.S.C. § 1957.  The PSI then subtracted two levels for acceptance of responsibility, and one level because Ridling timely notified authorities of his intent to enter a guilty plea.  His total offense level was 31.

At the sentencing hearing, Ridling continued to object to the PSI's application of intended loss.  He argued that he intended to repay all the loans.  The district court rejected Ridling's argument, observing that he operated his scheme without regard to the harm he might cause.  Relying on nonbinding precedent, *United States v. Morrison*, 713 F.3d 271 (5th Cir. 2013), the district court held that "when we're talking about intended loss, we're talking about whether there is indifference or reckless disregard for the ability to repay."  Applying a recklessness standard, the district court adopted the PSI's intended loss amount of $52,719,192.89.

With a total offense level of 31 and a criminal history category of I, Ridling's Guideline range for Counts 1–22 was 108 to 135 months.  The district court imposed a 132-month sentence on those counts, along with 24-month sentences on each of Counts 23

and 24.  The result was a total sentence of 180 months (15 years), 3 years longer than what the prosecution had recommended.  The court also ordered Ridling to pay $10,910,851.43 in restitution.  In imposing the sentence, the court told Ridling "I think you were hoping to pay off litigation with additional fraud.  And maybe you had hoped that somehow a crop would come in or something else would materialize and you would make this all go away, but you were too far in the hole by the time any of that could have come to realization."  Ridling timely appealed his sentence.

## II

We review for clear error the district court's factual findings as to the amount of loss, but we review de novo the district court's application of the Sentencing Guidelines to those facts.  *United States v. Corbett*, 921 F.3d 1032, 1037 (11th Cir. 2019).

On appeal, Ridling argues that the district court erroneously applied a recklessness standard in assessing the amount of loss.  Under the correct standard, Ridling says, the amount of loss and his resulting offense level would have been lower.[1]  The government responds that Ridling invited the error, and, alternatively, that he failed to preserve the issue below.

---

[1] Ridling also argues that the district court imposed a substantively and procedurally unreasonable sentence.  Because we are vacating Ridling's sentence and remanding for a determination of the loss amount, we make no comment on whether Ridling's sentence was reasonable.

As to invited error, "[i]t is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." *Birmingham Steel Corp. v. Tenn. Valley Auth.*, 353 F.3d 1331, 1341 n.5 (11th Cir. 2003). The government says that Ridling invited the court to (1) apply a recklessness standard, and (2) use $52,719,192.89 as the intended loss amount. On the first point, it is true that Ridling's sentencing memorandum cited a Fifth Circuit case, *Morrison*, 713 F.3d 271, which endorsed a recklessness standard. But defense counsel cited *Morrison* only for the proposition that actual loss—not intended loss—is the proper metric where there is evidence of intention to repay the loans. Defense counsel never asked the court to apply a recklessness standard. On the second point, context is important. An early version of the PSI made mathematical errors and listed intended loss at $69.9 million. Defense counsel identified those errors and argued that the correct tabulation was roughly $52.7 million. But Ridling also objected to the PSI's use of intended loss, rather than actual loss, to calculate the amount of loss. And defense counsel urged the court *not* to sentence Ridling using intended loss at all, maintaining that "Mr. Ridling intended to repay everyone." He asked the court to use actual loss instead. So although defense counsel was imprecise in framing his argument, we cannot say that he invited the court to sentence Ridling based on an intended loss amount of $52,719,192.89.

Nor did defense counsel fail to preserve an objection to how the district court calculated the amount of loss in the proceedings

below.   He argued in his sentencing memorandum that: (1) "intended loss" is defined as "pecuniary harm that the defendant purposely sought to inflict," (2) Ridling did not purposely inflict a loss, and (3) the court should thus sentence Ridling based on actual loss. At the sentencing hearing, defense counsel emphasized once again that Ridling did not intend to harm anyone, and that "[h]e was hoping eventually that the crop would come in, so to speak, and that he would be able to repay everyone."   Therefore, Ridling did not waive or forfeit his objection to the amount of loss.

Turning to the merits, then, we find that the district court erred in applying a recklessness standard to determine intended loss.  The Sentencing Guidelines make clear that intended loss is "the pecuniary harm that the defendant *purposely* sought to inflict."[2]  U.S.S.G. § 2B1.1, cmt. n.3(A)(ii) (emphasis added).  And the difference between acting recklessly and purposely is significant, as recklessness is a "less culpable mental state."   *Borden v. United States*, 141 S. Ct. 1817, 1821–22 (2021).  Therefore, the district court erred by holding Ridling responsible for intended loss based on recklessness.

As for actual loss, which is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense," the PSI

---

[2] We have held that the commentary for a guideline is "authoritative 'unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'"   *United States v. Cingari*, 952 F.3d 1301, 1308 (11th Cir. 2020) (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)).

does not appear to have calculated the total amount, and the district court does not appear to have made a factual finding on the matter. *See* U.S.S.G. § 2B1.1, cmt. n.3(A)(i). Because the amount of loss is a finding for the district court to make in the first instance, we remand for the district court to calculate intended and actual loss under the proper standards. On remand, the district court should take additional evidence if needed and recalculate the Guideline range if its findings so require. Accordingly, we vacate Ridling's sentence and remand for resentencing in accordance with this opinion.

**VACATED and REMANDED.**