RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0206p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

Nos. 03-6261/6560

JOHN DOE et al.

     *Plaintiffs-Appellants,*

  *v.*

LEXINGTON-FAYETTE URBAN COUNTY
GOVERNMENT et al.,

     *Defendants-Appellees.*

Nos. 03-6261/6490/6517/6560

No. 03-6490

JOHN DOE et al.,

     *Plaintiffs-Appellants,*

  *v.*

PAM MILLER et al.,

     *Defendants-Appellees.*

No. 03-6517

KEITH RENE GUY, SR. et al.

     *Plaintiffs-Appellants,*

  *v.*

LEXINGTON-FAYETTE URBAN COUNTY
GOVERNMENT,

     *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
Nos. 02-00439; 00-00166; 98-00431; 03-00012—
Karl S. Forester, District Judge; Joseph M. Hood, Chief District Judge.

Argued: March 16, 2005

1

Decided and Filed:  May 5, 2005

Before:  COLE and GILMAN, Circuit Judges; POLSTER, District Judge.[*]

———————————————

**COUNSEL**

———————————————

**ARGUED:** James M. Morris, MORRIS & MORRIS, Lexington, Kentucky, for Appellants. Sheryl G. Snyder, FROST, BROWN & TODD, Louisville, Kentucky, for Appellees. **ON BRIEF:** James M. Morris, Sharon K. Morris, MORRIS & MORRIS, Lexington, Kentucky, for Appellants. Sheryl G. Snyder, David S. Kaplan, FROST, BROWN & TODD, Louisville, Kentucky, Michael Harris Baker, BAKER, KRIZ, JENKINS & PREWITT, Lexington, Kentucky, Leslye M. Bowman, LEXINGTON-FAYETTE URBAN COUNTY GOVERNMENT DEPARTMENT OF LAW, Lexington, Kentucky, for Appellees.

———————————————

**OPINION**

———————————————

RONALD LEE GILMAN, Circuit Judge.  In 1969, Ronald Berry founded a summer program for disadvantaged youth called Micro-City Government.  This program was funded in part by the Lexington-Fayette Urban County Government (LFUCG).  Numerous former teenagers who participated in Micro-City Government now claim that LFUCG continued to support the program even after learning that Berry was sexually molesting them, and that LFUCG knowingly concealed Berry's conduct for political reasons.

These appeals arise from the plaintiffs' attempt to maintain a class-action lawsuit against LFUCG.  Although several procedural issues are raised, the key issue is whether to vacate two orders dismissing earlier class-action lawsuits against LFUCG brought by Berry's victims.  For the reasons set forth below, we **REVERSE** the judgment of the district court in *Guy et al. v. LFUCG*, No. 98-431-KSF, and **REMAND** the case for further proceedings consistent with this opinion.

**I.  BACKGROUND**

**A.      Factual background**

From 1969 until 2000, LFUCG provided funding for Micro-City Government, a summer program founded by Ronald Berry.  The purpose of the program was to provide part-time summer employment for disadvantaged area youth.  According to many of the program's participants, however, Berry physically, mentally, and sexually abused them, with the latest acts of abuse occurring in May of 1995.  Berry was subsequently convicted on 12 counts of sodomy and abuse of minors in criminal proceedings brought by the Commonwealth of Kentucky.

The plaintiffs in the present case, 96 former Micro-City Government participants, claim that LFUCG knowingly concealed and facilitated the abuse.  Specifically, they allege that LFUCG officials were informed of the abuse on a number of occasions, and that at least one LFUCG official actually witnessed "one of Berry's sexual outings." Nevertheless, LFUCG continued to fund Micro-City Government and is alleged to have actively concealed Berry's behavior.  The plaintiffs further

———————————————

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

allege that LFUCG retained Berry as the director of the program even after LFUCG officials were aware of the abuse, and that at least one Mayor of Lexington refused to cut off funding or expose Berry because doing so would not have been "politically sustainable."

## B.      Procedural background

### 1.      *Guy*

On October 15, 1998, the four victims who initiated the criminal charges against Berry (Keith Rene Guy Sr., Barry Lynn Demus Jr., Octavius Gillis, and Christopher Andrew Williams) filed a class action lawsuit against LFUCG, alleging that it had been both aware of and deliberately indifferent to the abuse. (This suit, *Guy et al. v. LFUCG*, No. 98-431-KSF, is hereinafter referred to as *Guy*.) But in January of 2000, before any determination was made as to the certification of the class, the *Guy* plaintiffs (with the exception of Guy himself) settled with LFUCG and joined in the defense motion to dismiss the case. On January 12, 2000, Craig Johnson and David Jones, two victims who were not among the *Guy* plaintiffs, moved to have notice of the dismissal provided to the putative class members pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. This request for notice was rejected by the district court in an April 4, 2000 order that provides the following rationale:

> Four named plaintiffs brought the instant case and Jones and Johnson moved to intervene. Considering that this lawsuit was filed in October 1998 and that there has been an enormous amount of publicity about the case, the Court believes that it is unlikely that many more alleged victims will come forward. Accordingly, the Court finds that the class is not so numerous that joinder is impracticable. Since the class fails to meet the prerequisites of Rule 23(a), notice to putative class members is not warranted.

As demonstrated by the later filings related to this case, however, the district court's reasoning was based on faulty assumptions. Nearly 100 putative class members came forward within two years after the district court's April 4, 2000 *Guy* order that dismissed the case. Guy, Johnson, and Jones all appealed.

As discussed in greater detail below, Johnson and Jones eventually settled. Guy's appeal, however, was considered by a prior panel of this court in *Guy v. Lexington-Fayette Urban County Gov't*, Nos. 00-5434 & 00-5569, 2003 WL 133037 (6th Cir. Jan. 15, 2003) (unpublished). The panel concluded that Guy lacked standing to pursue the claim with respect to the notice requirement. Similarly, the panel concluded that the district court did not abuse its discretion in holding Guy to his earlier agreement to settle his case. It therefore affirmed the judgment of the district court in *Guy*.

### 2.      *Doe I*

On May 3, 2000, Johnson, Jones, and seven other "John Does" filed a second class-action complaint that contained the same allegations as in *Guy*. (This action, *Doe v. LFUCG*, No. 00-166-KSF, is hereinafter referred to as *Doe I*.) *Doe I* was settled some two years later, on June 28, 2002. The district court again failed to provide any notice to putative class members when the parties settled, and the case was dismissed. No one, however, requested that notice be provided, and there is nothing in the record to demonstrate that the district court even considered the applicability of Rule 23(e). Johnson, Jones, and LFUCG subsequently filed a joint motion to dismiss Johnson's and Jones's outstanding appeal in *Guy*. The motion was granted by this court in January of 2003.

### 3.     *Doe II*

On September 25, 2002, 38 John Does (who are included in the present appeal) filed a third class action case, making the same allegations as in *Guy* and *Doe I*, as well as various claims under federal racketeering laws.  (This action, *Doe #1-33 v. LFUCG*, No. 02-436-JMH, is hereinafter referred to as *Doe II.*)  The district court, on April 23, 2003, dismissed *Doe II* as being barred by the applicable statute of limitations.

### 4.     *Discovery and attorney fees*

At a scheduling conference in *Doe II*, the district court gave both parties 30 days to conduct discovery on the issue of whether the case was barred by the applicable statute of limitations.  Although the Does did not initially object to the 30-day deadline, and even failed to depose certain parties "out of professional courtesy," they subsequently moved for an extension of time to conduct more discovery on LFUCG's alleged concealment of Berry's abuse.  The district court denied the motion, noting that extensive discovery had already been conducted on the concealment issue and chastising the Does for "permitt[ing] the opportunity to depose the desired parties to slip through their fingers even as they held that opportunity in their hands."

After successfully opposing the Does' motion to compel during this discovery period, LFUCG moved to recover its attorney fees on that motion.  The district court held that the Does' motion to compel had not been "substantially justified," and thus awarded LFUCG $5,841.80 in attorney fees.

### 5.     *Doe III*

On the same date that *Doe II* was dismissed, 58 new John Does (who are also included in the present appeal) filed still another class-action case, again repeating the same allegations as in *Guy*, *Doe I*, and *Doe II*.  (This action, *Doe #1-44 v. LFUCG, No. 03-12-JMH*, is hereinafter referred to as *Doe III*.)  *Doe III* was dismissed over a year later by the district court on November 21, 2003 as being time-barred by the applicable statute of limitations.

### 6.     *Doe v. Miller*

The 58 new Does also filed a separate action, *Doe v. Miller*, No. 00-166-KSF, in which they moved to intervene in the earlier *Guy* and *Doe I* cases pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure.  They contend that the lack of notice to the putative class members violated their right to the due process of law, making the judgments in those cases void.  The Does' claims in *Doe v. Miller* were rejected by the district court in an order entered on October 7, 2002.

Three related appeals have arisen from this procedural morass.  *Doe v. Miller* has been consolidated with *Guy v. LFUCG*.  The third appeal is *Doe v. LFUCG*.

## II. ANALYSIS

### A.     Standard of review

#### 1. *Summary judgment*

The district court's grant of summary judgment is reviewed de novo.  *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 629 (6th Cir. 2002).  Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### 2. *Rule 60(b) claims*

This court will review the denial of a Rule 60(b) motion under the "abuse of discretion" standard. *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 355 F.3d 574, 583 (6th Cir. 2004). In order to find an abuse of discretion, we must have "a definite and firm conviction that the trial court committed a clear error of judgment." *Davis v. Jellico Comm. Hosp., Inc.*, 912 F.2d 129, 133 (6th Cir. 1990) (citation omitted). Relief under Rule 60(b), moreover, is "circumscribed by public policy favoring finality of judgments and termination of litigation." *Waifersong Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992).

### 3. *Discovery, attorney fees, and class certification*

Because "the scope of discovery is within the sound discretion of the trial court," *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981), this court will not reverse the district court's decision unless the district has abused its discretion. *Lott v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001). The same standard applies to a district court's decision regarding an award of attorney fees. *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 799 (6th Cir. 1996). Likewise, "[w]e review decisions [about] whether to certify a class under an 'abuse of discretion' standard." *Mayer v. Mylod*, 988 F.2d 635, 640 (6th Cir. 1993).

## B.     The Does' motion under Rule 60(b)(4) with respect to their Rule 23(e) notice claims

By failing to provide notice to the putative class members in *Guy* and *Doe I*, the district court is alleged to have acted inconsistently with both the Rules of Civil Procedure and with basic notions of due process. The Does therefore request that this court vacate the *Guy* and *Doe I* judgments pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure, which allows us to grant relief when an earlier "judgment is void." "A judgment is void under 60(b)(4) 'if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'" *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995) (quoting *In re Edwards*, 962 F.2d 641, 644 (7th Cir. 1992)).

Rule 23(e) of the Federal Rules of Civil Procedure regulates the dismissal or settlement of class actions. That subsection, as it applies to the facts of this case in its formulation prior to amendment in December of 2003, provided that a "class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Fed. R. Civ. P. 23(e) (2003). As many commentators have noted, "[t]he purpose of the rule is to discourage the use of the class action device by the individual representative plaintiff to secure an unjust private settlement and to protect the absent class members against the prejudice of discontinuance." Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 8:18 (4th ed. 2002).

Most courts have found that Rule 23(e)'s notice requirement applies to *putative* class members as well as to *certified* class members. *See Culver v. City of Milwaukee*, 277 F.3d 908, 914-15 (7th Cir. 2002) ("[T]he context in which 'class' is used in Rule 23(e) indicates that it is not limited to a certified class. Even cases that refuse to apply Rule 23(e) to putative class actions require notice to the members of the putative class if it seems clear that otherwise their interests would be harmed."); *see also Birmingham Steel Corp. v. TVA*, 353 F.3d 1331, 1339 (11th Cir. 2003) (holding that "once a district court has decertified a class, it must ensure that notification of this action be sent to the class members, in order that the latter can be alerted that the statute of

limitations has begun to run again on their individual claims"); *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 764-65 (8th Cir. 2001) (finding that Rule 23(e) is applicable even if "a class has not yet been certified," and that "in deciding whether to allow dismissal or issue notice, the district court must consider, among other things, the possibility that potential members of the class would be prejudiced"); *Diaz v. Trust Territory of the Pac. Islands*, 876 F.2d 1401, 1408, 1409 (9th Cir. 1989) (adopting "the majority approach . . . that Rule 23(e) applies before certification," and noting that "notice of dismissal protects the class from prejudice it would otherwise suffer if class members have refrained from filing suit because of knowledge of the pending class action").

Even the circuits that have not required notice to putative class members as a general rule have warned that failure to provide notice is justified only in instances free of prejudice and collusion. *See Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1315 (4th Cir. 1978) ("[I]n the pre-certification settlement context of an action begun as a class action, a District Court is not automatically obligated to order notice to all putative class members under the terms of 23(e) but should, after proper inquiry, determine whether the proposed settlement and dismissal are tainted by collusion or will prejudice absent putative members with a reasonable 'reliance' expectation of the maintenance of the action for the protection of their interests."); *cf. Pearson v. Skydell*, 522 F.2d 171, 177 (5th Cir. 1975) ("[W]here a court has ruled under Rule 23(c)(1) that an action cannot properly be maintained as a class action[,] the notice requirements of Rule 23(e) do not apply, at least where the dismissal and settlement of the action do not directly affect adversely the rights of individuals not before the court.").

Ultimately, the general rule adopted by most federal courts that have addressed the topic is the one articulated in Newberg:

> [M]ost requests for voluntary dismissals of representative suits are made before there has been any class ruling. Whether a voluntary dismissal in these circumstances is sought in connection with a proposed settlement of claims of the individual plaintiff only or in a nonsettlement context, most courts have stressed the need under Rule 23(e) to examine *whether any prejudice to the class will result if the dismissal of the action is allowed without class notice*.

Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11:72 (4th ed. 2002) (footnotes omitted) (emphasis added); *see also Simer v. Rios*, 661 F.2d 655, 666 (7th Cir. 1981) ("[W]e believe that there are serious shortcomings with a rule that would require that Rule 23(e) be applied to all settled class actions which have not been certified. . . . Therefore, rather than setting down an absolute rule[,] we choose to place discretion in the district court to assess the *prejudice to absent class members caused by the settlement*, the institutional costs of notice and a certification hearing, as well as other factors relevant to this determination.") (emphasis added). If, upon examination, the district court should find that the putative class members are likely to be prejudiced on account of a settlement or dismissal, the district court should provide Rule 23(e) notice.

LFUCG, however, argues that the "precedents from the pre-certification context do not apply because class certification was expressly denied in *Guy* and *Doe I*." This position, however, is not supported by the relevant caselaw. The Seventh Circuit, for example, explicitly considered and rejected the argument that notice is not required when class certification has been denied in the case of *Culver v. City of Milwaukee*, 277 F.3d 908 (7th Cir. 2002). In *Culver*, a group of white males brought a class action on behalf of themselves and others, claiming that they had been discriminated against by the Milwaukee police department. The district court granted the city's motion to decertify the class action on the merits. It did not, however, issue a notice of dismissal to the putative class members.

On appeal, the Seventh Circuit determined that the class action had been correctly dismissed. Nonetheless, the court found that the district court had erred in failing to give notice to the putative class members pursuant to Rule 23(e). It noted that an important justification for the application of Rule 23(e) was that "[t]he filing of a class action suit tolls the statute of limitations for all the members of the class, but when the suit is dismissed without prejudice or when class certification is denied[,] the statute resumes running for the class members." *Id.* at 914 (citations omitted). The court further concluded that, in the present case, "the statute of limitations on [the class members'] claims will run without their knowing it until it is too late." *Id.* Applying the rule that "[t]he judge's duty is to order notice unless the risk of prejudice to absent class members is nil," *id.* at 915, the court remanded the case to the district court for compliance with Rule 23(e), even though, as here, the district court had already rejected class certification. *Id.; see also Birmingham Steel Corp. v. TVA*, 353 F.3d 1331, 1339 (11th Cir. 2003) (adopting the rule in *Culver*).

Consistent with the above caselaw, the Does argue that prejudice can be inferred from the great publicity surrounding the underlying facts of this case. They point to a line of cases standing for the proposition that prejudice can be inferred where the litigation has received widespread publicity, which increases the likelihood that putative class members have relied on the lawsuit in question. *See, e.g.*, *In re Cardizem CD Antitrust Litig.*, No. 99-MD-1278, 2000 WL 33180833, at *6-7 (E.D. Mich. Sept. 21, 2001) (unpublished) (observing that a "reliance interest can become a danger when the filing of a class action complaint receives attention by the news media," and finding that putative class members were prejudiced in part because "[t]hese consolidated actions have received publicity, both nationally and in the areas where the suits were initially filed") (quoting *Anderberg v. Masonite Corp.*, 176 F.R.D. 682, 690 (N.D. Ga. 1997)); *cf. Sikes v. AT&T*, 841 F. Supp. 1572, 1579-80 (S.D. Ga. 1993) (finding that a lack of publicity indicates that "any absent unnotified proposed class members are not likely to have developed a 'reliance interest' in the proposed class action," and that, "[i]f no reliance interest were likely to have developed, then it would seem unnecessary" to provide notice).

Rather than adopt a per se rule, most courts considering the issue have found the level of publicity to be one of several factors appropriately considered when examining whether putative class members are likely to be prejudiced if the class-action case is dismissed without notice. *See In re Cardizem CD Antitrust Litig.*, 2000 WL 33180833, at *7 (weighing a variety of factors, including the substantial press coverage of the class-action lawsuit, in finding prejudice to the putative class to exist); *Anderberg*, 176 F.R.D. at 690 (noting that "[o]nce absent class members know of a pending litigation involving their rights, they may act in reliance upon the class action and not file their own individual suits," but also finding that the low level of publicity combined with other factors counseled against ordering notice in the case before it). We therefore decline the Does' invitation to declare that all cases where there is widespread publicity require notice to the putative class members. Instead, we adopt the general principle that the amount of publicity is simply one factor among others that a district court should take into account when considering whether putative class members are likely to be prejudiced by a settlement.

Consistent with the majority rule that a district court should order Rule 23(e) notice where the putative class is likely to be prejudiced by the dismissal or settlement of a class-action suit, we conclude that the district court below abused its discretion in not providing notice in both *Guy* and *Doe I*. One key factor supporting our conclusion is that once the abusive activity at the Micro-City Government program was thrust into the open, the local media devoted substantial coverage to the abuse. This included coverage of the *Guy* and *Doe I* lawsuits. Such public attention presumably led putative class-action members to believe that their rights were being adequately represented by the *Guy* and *Doe I* plaintiffs. Without notice that these actions had been dismissed, the putative class members were likely lulled into believing that their claims continued to be preserved.

The other significant consideration in our evaluation was that the district court in *Guy* relied on a faulty assumption in denying the notice request. The Micro-City Government program was popular and long-lasting, with thousands of participants during its 30-year lifetime. There is, moreover, evidence demonstrating that Berry had been abusing many of the participating youths throughout the length of the program. (The Does even allege that one of Berry's primary motivations in establishing the program was to give him sexual access to children.) In light of these facts, which were known at the time of *Guy*, the district court's conclusion that "it is unlikely that many more alleged victims will come forward" was objectively unreasonable. There was in fact substantial reason to believe that many more victims would come forward, as in fact actually occurred with the filing of the *Doe II* and *Doe III* lawsuits.

We therefore adopt the view of the majority of the circuits that Rule 23(e) applies in a precertification context where putative class members are likely to be prejudiced. Moreover, because of the public policy considerations involved, we further adopt the reasoning articulated by the Seventh Circuit in *Culver* that Rule 23(e) may be applied where the district court has already rejected class certification. Under this standard, the district court in *Guy* erred in failing to provide notice to the putative class members because they were clearly prejudiced by the dismissal of that case. We decline, however, to vacate the district court's order in *Doe I*. Although the majority rule discussed above also renders questionable the district court's failure in *Doe I* to order notice to putative class members, the *Doe I* settlement between the named plaintiffs and LFUCG was contingent upon the dismissal of the class action. An action by this court vacating the district court's order in *Doe I* would therefore disturb the settlement. On the other hand, vacating the *Guy* order reaches the equitable result of allowing the Does to go forward with their case while preserving the settlement reached by the *Doe I* parties.

**C.     Statutes of limitation (discovery rule and equitable-tolling analysis)**

Statutes of limitation that cover the acts alleged by the Does range from one year to six years. Because *Guy* will be reopened, however, the various statutes of limitation will be considered as tolled from and after the filing of *Guy*. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983) ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.") (citation omitted). We therefore need not address the discovery-rule and equitable-tolling arguments presented by the Does.

**D.     The Rule 60(b)(2) and (3) motions with respect to *Guy* and *Doe I***

The Does further claim that LFUCG and the plaintiffs' counsel in *Guy* and *Doe I* took actions that constituted fraud, collusion, misrepresentation, and misconduct, meriting relief under Rules 60(b)(2) and 60(b)(3) of the Federal Rules of Civil Procedure. Because *Guy* will be reopened on the basis of Rule 60(b)(4), however, we have no need to address these alternative claims for relief.

**E.     Whether the statutes of limitation were tolled by *Doe I***

LFUCG contends that "*Crown Cork* tolling applies only to the first class action," and therefore argues that the various statutes of limitation were not tolled when *Doe I* was filed. Because the *Guy* class action will be reopened for the reasons set forth in Part II.B. above, we need not address the question of whether the statutes of limitation for *Doe II* and *Doe III* were tolled by the filing of *Doe I*.

**F.      30-day discovery period**

A district court's decision to limit discovery will generally be upheld unless the decision is deemed to be "an abuse of discretion resulting in substantial prejudice." *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999).  The circumstances surrounding the district court's decision here to deny an extension of time beyond the 30 days of discovery it granted for the statute-of-limitation issue suggest that the district court did not abuse its discretion.  Most tellingly, a portion of the evidence that the Does claim to have been denied the opportunity to introduce was lost because of their own lack of diligence.  As the court noted, "the Plaintiffs' counsel's failure to procure the depositions of certain parties out of their own perceived 'professional courtesy' in the face of a deadline of which all parties were aware . . . [is] the Plaintiffs' own loss."  The district court's decision not to reward the Does for "permit[ting] the opportunity to depose the desired parties to slip through their fingers even as they held that opportunity in their hands" was well within the "broad discretion" that a district court has over the scope of discovery. *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998).  Even if this were not the case, the reopening of *Guy* makes this issue moot.  We therefore decline to hold that the district court abused its discretion by limiting discovery on this issue to 30 days.

**G.      Attorney fees relating to the Does' motion to compel**

  *1.      Whether the motion was substantially justified*

Rule 37(a)(4)(B) of the Federal Rules of Civil Procedure provides that if a motion to compel discovery is denied,

> the court . . . shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

A motion is "substantially justified" if it raises an issue about which "there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citations and quotation marks omitted).  As noted by the Supreme Court, "the one [connotation] most naturally conveyed by the phrase before us here ["substantially justified"] is not 'justified to a high degree,' but rather 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Id*.

This circuit has adopted a four-factor test to determine whether a district court's decision to impose sanctions under Rule 37 amounts to an abuse of discretion:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered.

*Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997).  The first *Freeland* factor appears to cut in the Does' favor because the motion to compel raised an issue about which reasonable people could differ.  As noted by the Does, LFUCG produced thousands of pages of the documents requested by the motion between the time that the motion was filed and the time that the district court granted attorney fees to LFUCG.  This strongly suggests that the Does' request for these documents was plausible on its face.

Likewise, LFUCG could not have been "prejudiced by the [Does'] failure to cooperate in discovery," *Freeland*, 103 F.3d at 1277, if the motion was substantially justified. The third factor also weighs in the Does' favor, because the district court did not warn them that a motion to compel could result in attorney fees being assessed against them. *See id.* Finally, because the district court did not dismiss the case, the fourth *Freeland* factor is not applicable to the present circumstances. *See id.*

### 2.    *The Does' citation of* Harding v. Dana Transport

Central to the district court's imposition of sanctions was its discussion of the deficiencies in the Does' argument for the discovery of materials that LFUCG claimed were protected by the attorney-client privilege. Although the Does may have been wrong on this issue, the district court's sweeping statement that the authority cited by the Does "was not germane in any way to the issue before the Court" was overbroad. The case cited by the Does, *Harding v. Dana Transport, Inc.*, 914 F. Supp. 1084 (D.N.J. 1996), involved the scope of the attorney-client privilege in the context of discovery, and ultimately held that the privilege had been waived with regard to the information at issue. *Id*. at 1103.

Regardless of whether the ultimate issue addressed in *Harding* was identical to the issue raised by the Does, *Harding* clearly provides support for a party seeking to compel discovery of information that the opposing party claims is protected by the attorney-client privilege. *See id.* at 1089-90, 1102 (holding that "[a] party or person seeking to obtain a protective order on the basis of an asserted privilege bears the burden of establishing the applicability of a privilege to the information sought," and noting that "there is no general prohibition against obtaining the deposition of adverse counsel regarding relevant, non-privileged information") (citation omitted).

In sum, we conclude that the district court abused its discretion by granting attorney fees in regard to a motion that, even if properly denied, was substantially justified. We therefore vacate the district court's order awarding attorney fees to LFUCG.

## H.    Class certification

The district court's denial of class certification was based on its holding that the denial of certification in *Doe I* collaterally estopped consideration of this issue in *Doe II* and *Doe III*. *See Montana v. United States*, 440 U.S. 147, 153 (1979) (holding that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation"); *Hammer v. INS*, 195 F.3d 836, 840 (6th Cir. 1999) (applying a five-factor test to determine whether collateral estoppel applies, with one of the requirements being that "the issue was actually litigated and decided in the prior action"). Because *Guy* is being reopened, however, there is no longer a final judgment determining the issue of class certification. We therefore remand the issue of class certification to the district court for reconsideration on the merits.

## III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court with respect to *Guy* and the award of attorney fees to LFUCG in *Doe II*, and **REMAND** the case for further proceedings consistent with this opinion. The remaining issues in these consolidated appeals are **DISMISSED** as moot.