Salatino v. Chase (2005-506 & 2006-101)

2007 VT 81

[Filed 31-Aug-2007]


 NOTICE: This opinion is subject to motions for reargument under V.R.A.P.
 40 as well as formal revision before publication in the Vermont Reports. 
 Readers are requested to notify the Reporter of Decisions, Vermont Supreme
 Court, 109 State Street, Montpelier, Vermont 05609-0801 of any errors in
 order that corrections may be made before this opinion goes to press.


 2007 VT 81

 Nos. 2005-506 & 2006-101


 Joseph Salatino and Judith Salatino Supreme Court

 On Appeal from
 v. Chittenden Superior Court


 David S. Chase, Brianne E. Chase and January Term, 2007
 Vermont Associates in Ophthalmology


 Ben W. Joseph, J.

 Jacob B. Perkinson, James F. Conway, III and Stacey K. Porter of Johnson &
 Perkinson, South Burlington, Michael F. Hanley and Paul J. Perkins of
 Plante & Hanley, P.C., White River Junction, and John P. Maley and
 Christopher J. Maley of Sylvester & Maley, Inc., Burlington, for
 Plaintiffs-Appellants/Cross-Appellees.

 John D. Monahan, Jr. and Angela R. Clark of Dinse, Knapp & McAndrew, P.C.,
 Burlington, for Defendants-Appellees/Cross-Appellants.

 PRESENT: Reiber, C.J., Johnson and Skoglund, JJ., and Wesley, Supr. J.
 and Martin, Supr. J. (Ret.), Specially Assigned

 
 ¶ 1. REIBER, C.J. In these consolidated appeals, plaintiffs Joseph
 and Judith Salatino appeal the trial court's denial of their motion to
 certify a limited-fund class action. Defendants David and Brianne Chase
 and Vermont Associates in Ophthamology appeal the court's order requiring
 notice of the certification decision to the putative class members, the
 content of the notice, and the manner of giving notice. Plaintiffs appeal
 the court's order allocating the costs of providing notice. Because
 plaintiffs did not establish the prerequisites for maintaining a
 limited-fund class action, we affirm the decision denying class
 certification. We reverse the superior court's decision to provide notice
 of the class-certification decision to putative class members. Because we
 hold that notice is not required, we do not reach defendants' claims
 regarding the content and manner of providing notice, nor do we consider
 plaintiffs' appeal of the cost-allocation order. 

 ¶ 2. David Chase was a licensed ophthalmologist who ran Vermont
 Associates in Ophthamology with his wife Brianne Chase, a licensed
 optician. Dr. Chase was licensed in Vermont from 1968 until July 2003,
 when the Medical Practice Board suspended his license based on evidence
 that Dr. Chase had performed unnecessary cataract surgeries. In December
 2003, the State requested that the Board revoke Dr. Chase's license on the
 basis that he had falsified patient records, pressured patients to have
 unnecessary cataract surgery, performed unnecessary surgeries, and engaged
 in other unprofessional conduct in the treatment of at least fourteen
 patients. Based on similar facts with respect to thirty-five patients, Dr.
 Chase was indicted by a federal grand jury on eighty-one criminal counts in
 September 2004. He was ultimately acquitted of all but two of the criminal
 counts. The United States of America, together with the State of Vermont,
 also filed a civil complaint against Dr. Chase in May 2005 for submitting
 false claims to federal and state health programs for at least thirty-three
 patients. That complaint was voluntarily dismissed without prejudice nine
 months later.
 
 ¶ 3. Plaintiffs were patients of Dr. Chase beginning in 1978. They
 commenced this action in July 2003, shortly after Dr. Chase's medical
 license was suspended. Plaintiffs' second amended complaint, filed in
 December 2003, included a class-action claim under the Vermont Consumer
 Fraud Act (CFA). 9 V.S.A. §§ 2451-2480n. Plaintiffs' initial complaint did
 not demand class certification. In March 2004, plaintiffs moved for class
 certification of the CFA claim under V.R.C.P. 23(b)(3), arguing that issues
 of fact and law common to the class predominated over individual questions. 
 A year later, the court denied certification, finding that the CFA claim
 principally raised issues needing individualized proof. Consequently, the
 court found that common issues did not predominate, as the rule requires,
 and that allowing the action to proceed as a class action would not achieve
 judicial economy. Plaintiffs did not appeal that denial and did not move
 to notify putative class members of it. 

 ¶ 4. Shortly after the court denied certification of the CFA claim
 under the predominance rule, plaintiffs moved to certify a limited-fund
 class for all of their claims, under V.R.C.P. 23(b)(1)(B). Those claims
 included the CFA claim and common-law claims of medical negligence, lack of
 informed consent, negligent misrepresentation, negligent supervision,
 battery, and intentional infliction of emotional distress. The court
 denied the limited-fund class-certification motion, holding that plaintiffs
 had not met three of the four prerequisites for maintaining a class action
 under Rule 23(a). The court held that plaintiffs had not established the
 size of the class because it was unclear whether the class comprised all of
 defendants' former patients or only those who received unnecessary cataract
 surgery. Citing the earlier order denying the predominance class
 certification for the CFA claim, the court also held that plaintiffs'
 medical-malpractice claim was not suited for class treatment because it
 would have to be established by examining "the individual circumstances of
 class member[s]." Further, the court held that plaintiffs had not shown
 that limited-fund class certification was proper under Rule 23(b)(1)(B),
 and that the named plaintiffs might be in conflict with other class
 members. Plaintiffs appealed from the denial.(FN1) 
 
 ¶ 5. Plaintiffs also moved for approval to provide notice of the
 denial to the putative class members. Plaintiffs argued that the media
 coverage of Dr. Chase's license suspension and the subsequent litigation
 against him caused absent putative class members to rely on the nascent
 class action to protect their legal interests. The superior court, citing
 "the court's obligation to safeguard the interests of absent class
 members," granted plaintiffs' motion and approved notice of the
 class-certification decision to putative class members under Rule 23(d)(2). 
 The court reasoned that "the mere possibility that any of the media
 coverage surrounding Dr. Chase caused putative class members to rely on
 this suit suggests that notice is appropriate." In two later orders, the
 court established: (1) the content of the notice, (2) that notice would be
 given individually by first-class mail, and (3) that plaintiffs would bear
 the cost. Defendants appealed all three orders, contesting whether notice
 was appropriate at all, the manner of providing notice, and the content of
 the notice. Plaintiffs appealed the cost allocation. We first review the
 superior court's analysis of the suitability of limited-fund class
 certification. 

 I. The limited-fund class action

 ¶ 6. Our review of the class-certification decision has two aspects:
 we conduct a de novo review of the legal standards employed, and if the
 proper legal standards were used, we review the trial court's application
 of those standards for abuse of discretion. See Heerwagen v. Clear Channel
 Commc'ns, 435 F.3d 219, 225 (2d Cir. 2006). Plaintiffs contend, citing
 Heerwagen, that "a denial of class certification is accorded noticeably
 less deference than . . . a grant of certification." We disagree with
 plaintiffs on this point, and decline to construe Vermont Rule 23 as the
 Second Circuit construed the analogous federal rule in that case.(FN2) 
 
 ¶ 7. A mandatory class may be certified under Rule 23(b)(1)(B) when
 the prerequisites of Rule 23(a)--numerosity, commonality, typicality, and
 adequacy--are satisfied and 

 (1) the prosecution of separate actions by . . . individual
 members of the class would create a risk of 
 . . . 
 (B) adjudications with respect to individual members of the
 class which would as a practical matter be dispositive of the
 interests of the other members not parties to the
 adjudications or substantially impair or impede their ability
 to protect their interests.

 V.R.C.P. 23(b).(FN3) Vermont's rule mirrors the federal rule in every
 respect relevant here, see F.R.C.P. 23(b), and we therefore look to federal
 precedent to aid our interpretation of our rule.(FN4) 
 
 ¶ 8. The U.S. Supreme Court has analyzed the federal limited-fund
 rule at some length in a recent case, Ortiz v. Fibreboard Corp., 527 U.S.
 815 (1999). The Ortiz Court noted that, although Rule 23(b)(1)(B) also
 encompasses several other varieties of class actions, "[o]ne recurring type
 of such suits was the limited fund class action, aggregating 'claims . . .
 made by numerous persons against a fund insufficient to satisfy all
 claims.' " Id. at 834 (quoting Advisory Committee Notes, F.R.C.P. 23). As
 the superior court noted in denying plaintiffs' motion for limited-fund
 class certification, the Ortiz Court identified three characteristics of
 cases appropriate for limited-fund treatment under the rule. Id. at
 838-41. 

 ¶ 9. First, "the totals of the aggregated liquidated claims and the
 fund available for satisfying them, set definitely at their maximums,
 demonstrate the inadequacy of the fund to pay all the claims." Id. at 838. 
 This inadequacy is the sine qua non of a limited-fund class action; without
 a demonstration of insufficiency, binding absent class members would be
 unnecessary; the absent class members would be able to recover fully in
 separate actions. Id. at 838-39; In re Joint E. & S. Dist. Asbestos
 Litig., 982 F.2d 721, 739 (2d Cir. 1992) (limited-fund class certification
 appropriate to avoid prejudice to those who file later, where fund likely
 to be exhausted by earlier filers). Courts have adopted two different
 standards to determine the inadequacy of an asserted limited fund: (1)
 "inescapable" risk of fund exhaustion, In re N. Dist. of Cal., Dalkon
 Shield IUD Prod. Liab. Litig., 693 F.2d 847, 851-52 (9th Cir. 1982); and
 (2) "substantial probability," Trautz v. Weisman, 846 F. Supp. 1160, 1169
 (S.D.N.Y. 1994). The United States Supreme Court declined in Ortiz to
 decide which standard was appropriate because it determined that the Ortiz
 plaintiffs failed to meet either standard. 527 U.S. at 848 n.26.

 ¶ 10. "Second, the whole of the inadequate fund [is] to be devoted
 to the overwhelming claims." Id. at 839. This requirement ensures that
 limited-fund treatment does not "give a defendant a better deal than
 seriatim litigation would have produced." Id. Third, the Ortiz Court
 required that "the claimants identified by a common theory of recovery [be]
 treated equitably among themselves." Id. The Ortiz Court characterized
 these attributes initially as "at least a sufficient set of conditions to
 justify binding absent members of a class under Rule 23(b)(1)(B)," id. at
 838, but went on to conclude that "there are good reasons to treat these
 characteristics as presumptively necessary, and not merely sufficient." 
 Id. at 842 (emphasis added).
 
 ¶ 11. We have noted as a general matter that "class actions are
 intended to be of limited and special application, not to be casually
 resorted to or authorized." George v. Town of Calais, 135 Vt. 244, 245,
 373 A.2d 553, 554 (1977). This is particularly true of the mandatory class
 actions authorized by Rule 23(b)(1)(B), because class members are bound by
 the judgment or settlement obtained even if they do not participate in the
 action. See Reporter's Notes, V.R.C.P. 23 (members of a 23(b)(1)(B) class
 "cannot opt out because the very purpose of the action is to obtain a
 judgment that binds all in the class."). As the Reporter's Notes imply,
 mandatory class actions are fundamentally in tension with constitutional
 guarantees and therefore should not be liberally allowed. Ortiz, 527 U.S.
 at 845-47; see also AmChem Prods., Inc. v. Windsor, 521 U.S. 591, 612-13
 (1997) ("Rule 23's requirements must be interpreted in keeping with Article
 III constraints, and with the Rules Enabling Act, which instructs that
 rules of procedure 'shall not abridge, enlarge, or modify any substantive
 right.' ") (quoting the Rules Enabling Act, 28 U.S.C. § 2072(b)). Our
 Rules Enabling Act, 12 V.S.A. § 1, is nearly identical to the federal act,
 with which the AmChem Court was concerned. For these reasons, we construe
 Rule 23(b)(1)(B) narrowly.
 
 ¶ 12. Here, the trial court correctly concluded that the burden was
 on plaintiffs to show that they satisfied the Ortiz requirements. First,
 then, it was plaintiffs' burden to show that the total of the aggregated
 liquidated claims exceeded the fund available to satisfy them. See Ortiz,
 527 U.S. at 838. Plaintiffs contend that their aggregate claim for
 attorney's fees arising from their CFA claims exceeds the total amount of
 funds available to satisfy the claims. Plaintiffs assert that defendant's
 $21 million insurance policy will be exhausted by a total claim for fees
 and costs of over $25 million. The $25 million figure was derived by
 multiplying plaintiffs' estimate of the number of claimants--633--by
 plaintiffs' estimate that each claimant would be entitled to recover
 $40,000 in legal fees and costs. Plaintiffs assert that the attorney's
 fees are liquidated for purposes of satisfying the Ortiz requirement. The
 superior court, without analysis, characterized the fees as liquidated, but
 then concluded that plaintiffs' "fundamental stumbling block" in meeting
 their burden was their calculation of the number of class members entitled
 to a fee award. Because we affirm the result on a different basis, see
 Hudson v. Town of East Montpelier, 161 Vt. 168, 170, 638 A.2d 561, 563
 (1993), we do not consider the question of the number of class members.

 ¶ 13. We conclude that the CFA-based attorney's fees are not
 liquidated. The trial court concluded that "the only liquidated claim
 Plaintiffs present is their statutory claim for attorneys' fees and costs
 under the [CFA]." As a general matter, a liquidated claim is one whose
 amount is "settled or determined, [especially] by agreement." Black's Law
 Dictionary 949 (8th ed. 2004). 

 ¶ 14. The CFA provides that a prevailing plaintiff "may . . .
 recover from the seller, solicitor, or other violator . . . reasonable
 attorney's fees." 9 V.S.A. § 2461(b). "Where a court finds that the [CFA]
 has been violated, it is not within the court's discretion to determine
 whether to award such fees . . . but rather its task is to determine what
 constitutes reasonable fees in each instance." L'Esperance v. Benware,
 2003 VT 43, ¶ 21, 175 Vt. 292, 830 A.2d 675 (citation omitted). Trial
 courts determine reasonable attorney's fees by making a preliminary
 determination of the number of hours reasonably expended on the case,
 multiplying that number by a reasonable hourly rate, and then adjusting the
 result based on several factors. Id. ¶ 22. We afford the trial court
 "wide discretion" in determining reasonable fees. Human Rights Comm'n v.
 LaBrie, Inc., 164 Vt. 237, 251, 668 A.2d 659, 669 (1995).
 
 ¶ 15. Although the parties have cited no cases directly on this
 point, and our research reveals none, we note that other courts have
 concluded, for purposes of prejudgment-interest awards, that attorney's
 fees are not liquidated until fixed by the trial court following
 discretionary calculations similar to those detailed above. See, e.g.,
 State v. Ehrlander, 1998 WL 34347991 (Alaska 1998) (unreported mem.)
 (upholding trial court denial of prejudgment interest on attorney's fees
 because "the claim for attorney's fees was not liquidated until reduced to
 judgment"); Asian Imports, Inc. v. Pepe, 633 So. 2d 551, 553 (Fla. Dist.
 Ct. App. 1994) (trial court erred in awarding plaintiff attorney's fees
 without affording defendant an opportunity to be heard on the issue of
 their amount; "an item of damages for 'reasonable attorney's fees' is not
 liquidated"). Plaintiffs cite only a decision from the Bankruptcy
 Appellate Panel of the Ninth Circuit Court of Appeals for the proposition
 that the class members' attorney's fees are liquidated. In that case, the
 court decided that certain attorney's fees were subject to "ready
 determination" and therefore were "liquidated" for purposes of determining
 Chapter 13 bankruptcy eligibility. In re Wenberg, 94 B.R. 631, 634-35
 (B.A.P. 9th Cir. 1988). But that determination was only possible in
 Wenberg because the fees at issue had already been incurred and billed;
 although the parties disputed the precise amount, it was susceptible to
 calculation by the court. Id. The Wenberg decision was a limited one, and
 we decline to extend it to this very different factual context. Plaintiffs
 here are simply speculating about future fees and costs to be incurred. 
 Those fees are not, like the fees in Wenberg, subject to "ready
 determination."

 ¶ 16. Like the Ortiz Court, we need not decide whether plaintiffs
 must show a "substantial probability" of fund exhaustion, or that "allowing
 the adjudication of individual claims will inescapably compromise the
 claims of absent class members." Ortiz, 527 U.S. at 848 n.26. Plaintiffs
 met neither standard, and the trial court properly declined to certify the
 class.

 II. Notice
 
 ¶ 17. The second question presented for our review is whether the
 trial court erred in approving notice of the class certification denial to
 putative class members. Defendants argue, first, that Rule 23(d)(2) does
 not grant the court authority to order notice after it has decided not to
 certify a class. Whether the rule provides such authority is a question of
 law, which we review de novo. State v. Valyou, 2006 VT 105, ¶ 4, ___ Vt.
 ___, 910 A.2d 922 (mem.). Defendants' second argument is that if the court
 had legal authority to use Rule 23(d)(2) after denying class certification,
 it erred by approving notice to putative class members under the
 circumstances of this case. The permissive language of Rule 23(d) vests
 the trial court with discretion to order notice, and we review the court's
 decision for abuse of that discretion. 

 a. Authority under Rule 23(d)(2)

 ¶ 18. The threshold question is whether a court can use Rule
 23(d)(2) to order notice to putative class members after it has decided
 that an action cannot be maintained as a class action. The rule states: 

 In the conduct of actions to which this rule applies, the
 court may make appropriate orders: . . . (2) requiring, for
 the protection of the members of the class or otherwise for
 the fair conduct of the action, that notice be given in such
 manner as the court may direct to some or all of the members
 of any step in the action, or of the proposed extent of the
 judgment, or of the opportunity of members to signify whether
 they consider the representation fair and adequate, to
 intervene and present claims or defenses, or otherwise to
 come into the action. 

 V.R.C.P. 23(d)(2). Defendants argue that the phrase "actions to which this
 rule applies" limits the scope of Rule 23(d) to certified class actions.
 They also argue that, as soon as a court rules against class certification,
 the action stops being even a "putative class action," and the court can no
 longer rely on Rule 23(d) to make any orders relating to the action. 
 Defendants emphasize that the rule is directed at "members of the class"
 and note that when no class has been certified, there are no class members
 for the court to protect. On this reading, a court could use Rule 23(d)(2)
 only when a certified class exists and not before certification, or upon
 decertification, or when certification is denied. But this reading is
 unduly restrictive and contrary to the court's role as protector of absent
 class members' interests. See Phillips Petroleum Co. v. Shutts, 472 U.S.
 797, 809-10 (1985); Am. Pipe & Const. Co. v. Utah, 414 U.S. 538, 552 (1974)
 (stating that "potential class members are mere passive beneficiaries of
 the action" prior to the trial court's certification determination). Both
 the Advisory Committee Notes and the bulk of federal court decisions allow
 discretionary notice to uncertified classes under Rule 23, and we concur
 that notice may be proper under certain circumstances. We conclude,
 however, that the trial court erred in ordering notice under the facts
 presented here. 

 ¶ 19. There are few decisions applying Rule 23(d)(2) in
 circumstances similar to those presented here, but many appellate courts
 have allowed (or ordered) courts to use Rule 23(e) to provide notice of a
 dismissal or compromise to putative members of an uncertified class. Doe
 v. Lexington-Fayette Urban County Gov't, 407 F.3d 755, 761-62 (6th Cir.
 2005) (requiring notice of dismissal to putative class members under Rule
 23(e) after class certification denied).(FN5) The circuit courts have
 generally held that if a court finds "that the putative class members are
 likely to be prejudiced on account of a settlement or dismissal, the
 district court should provide Rule 23(e) notice." Doe, 407 F.3d at 762. 
 Rule 23(e) is a notice provision that applies only to dismissal or
 settlement and mandates notice, while Rule 23(d)(2) can relate to any
 aspect of a class action and is discretionary. Rule 23(e) notice to
 members of a certified class is required because when a previously
 certified class action is dismissed or settled, it will have a res judicata
 or collateral estoppel effect on class members. But courts also allow
 discretionary application of Rule 23(e) to uncertified classes, similar to
 the superior court's application of Rule 23(d)(2) here. 
 
 ¶ 20. While most courts allow discretionary use of the Rule 23
 notice provisions, defendants cite two federal district court cases in
 support of their plain-language theory. Street v. Diamond Offshore
 Drilling, No. 00-1317, 2001 WL 883216, *1 (E.D. La. July 30, 2001) (holding
 that Rule 23(d)(2) cannot be used to notify putative class members);
 Rineheart v. Ciba-Geigy Corp., 190 F.R.D. 197, 200 (M.D. La. 1999) (holding
 that Rule 23(e) cannot be used to notify putative class members). Street
 relies entirely on Rineheart for its reasoning and holding. Street, 2001
 WL 883216, *1. Rineheart, in turn, cites the Fifth Circuit's holding in
 Pearson as the main basis for concluding that Rule 23 notice cannot be
 provided when the court has not certified a class. Pearson v. Ecological
 Sci. Corp., 522 F.2d 171, 177 (5th Cir. 1975). But Pearson does not
 absolutely deny courts discretion to provide notice to putative class
 members under Rule 23. Pearson turned on its facts: the trial court had
 denied certification, and following that denial, the named plaintiffs
 settled with the defendants. Two named plaintiffs, who had attempted to
 revoke their stipulation to the settlement, then argued that the court
 erred in enforcing terms of the settlement, and the S.E.C., as amicus
 curiae, argued that the court had erred by failing to require Rule 23(e)
 notice of the proposed settlement to the putative class members. Id. at
 176. But there was no showing of prejudice to, or reliance by, putative
 class members. Accordingly, the Pearson court held that "where a court has
 ruled . . . that an action cannot properly be maintained as a class action
 the notice requirements of Rule 23(e) do not apply, at least where the
 dismissal and settlement of the action do not directly affect adversely the
 rights of individuals not before the court." Id. at 177. Pearson
 authorizes courts to weigh the rights and interests of absent putative
 class members; accordingly, it undercuts defendants' theory. Indeed, the
 Sixth Circuit cites Pearson for the rule that, where prejudice or collusion
 may occur, courts must use Rule 23(e) to notify putative class members of a
 dismissal or settlement even after they have denied class certification. 
 Doe, 407 F.3d at 761-62. 
 
 ¶ 21. Pearson quotes a statement from the Advisory Committee Notes
 to Rule 23 that appears to support defendants' position: " '[a] [n]egative
 determination (of class action status) means that [t]he action should be
 stripped of its character as a class action.'" Pearson, 522 F.2d at 177
 (quoting F.R.C.P. 23, Advisory Committee Notes). But the Advisory
 Committee went on to state that "[w]hether the court should require notice
 to be given to members of the class of its intention to make a
 determination [of class certification], or of the order embodying it, is
 left to the court's discretion under subdivision (d)(2)." F.R.C.P. 23,
 Advisory Committee Notes. The Advisory Committee envisioned that courts
 should make discretionary use of Rule 23(d)(2) in the exact situation
 presented here. The superior court correctly decided that Rule 23(d)(2)
 allows courts discretion to order notice of class-certification denial to
 putative class members.

 b. Discretionary Notice

 ¶ 22. Although the court had authority to provide notice to putative
 class members under Rule 23(d)(2), it remains to determine whether it
 properly exercised its discretion. The procedural and factual history of
 this case, and the policy reasons against court-approved notice to putative
 class members, which we outline below, substantially narrow the trial
 court's discretion here. "Abuse of discretion occurs when that discretion
 is exercised on grounds or for reasons clearly untenable, or to an extent
 clearly unreasonable." In re Halnon, 174 Vt. 514, 517, 811 A.2d 161, 165
 (2002) (mem.). The superior court exercised its discretion on grounds that
 are clearly untenable by concluding that notice to putative class members
 was appropriate because here "there is a significant risk of prejudice" to
 class members unaware that the denial of class certification restarts the
 running of the statutes of limitations on their claims against defendants. 
 We find no legal or factual basis for holding that there was any risk of
 prejudice to putative class members in this case, and absent such a risk,
 notice of class-certification denial was inappropriate. 
 
 ¶ 23. Ordering notice to putative class members--in addition to
 precipitating litigation of notice issues--imposes substantial time burdens
 and costs on the parties and the courts, as evidenced by the six months
 spent by the superior court determining the form, manner, and cost
 allocation of notice here. Notice can "be an exceedingly costly burden,
 and many times it is not necessary to protect the class." Glidden v.
 Chromalloy Am. Corp., 808 F.2d 621, 627 (7th Cir. 1986). Additionally,
 many courts have recognized that ordering notice to putative class members
 absent evidence of reliance would promote barratry and could suggest that
 the court had made merits-based determinations about the action. Street,
 2001 WL 883216 at *1; Marian Bank v. Elec. Payment Servs., Inc., No.
 95-614-SLR, 1999 WL 151872, *2 (D. Del. 1999); Rineheart, 190 F.R.D. at
 201; Maddox & Starbuck, Ltd. v. British Airways, 97 F.R.D. 395, 397
 (S.D.N.Y. 1984); Cherner v. Transitron Elec. Corp., 201 F. Supp. 934, 936
 (D. Mass. 1962). The Advisory Committee warned that notice "should not be
 used merely as a device for the undesirable solicitation of claims." 
 F.R.C.P. 23, Advisory Committee Notes. Given these countervailing
 interests, notice of class-certification denial is only appropriate when
 the denial may "affect adversely the rights of individuals not before the
 court." Pearson, 522 F.2d at 177. 
 
 ¶ 24. The main reason to order notice after denial of class
 certification is to ensure that putative members are not unfairly prevented
 from having their claims heard. While a pending class action does not bar
 individuals from filing separate claims, they may refrain from doing so and
 rely on the class action to protect their interests. To promote this
 practice, which furthers efficiency of litigation and helps avoid
 unnecessary filings, the filing of a class action tolls the statutes of
 limitation for the class claims of all putative class members. Am. Pipe &
 Constr. Co. v. Utah, 414 U.S. 538, 551, 553-54 (1974). But once a court
 denies class certification, the statutes of limitation run again. Crown,
 Cork & Seal Co. v. Parker, 462 U.S. 345, 354 (1983). The concern expressed
 by the superior court and plaintiffs here is that if these individuals do
 not learn that class certification has been denied, they will not know that
 the limitation period is again running, and they may miss the opportunity
 to have their claims adjudicated. 

 ¶ 25. While some potential plaintiffs may lose their chance to
 litigate by letting the statutes of limitation expire on their claims
 against Dr. Chase, absent a showing of reliance on the pending action,
 there is no risk that putative class members will be prejudiced if the
 court does not approve of notice that it has denied class certification. 
 The superior court suggests that merely restarting the running of the
 statutes of limitation prejudices class members. But rather than being
 prejudiced, putative class members benefitted from the American Pipe rule,
 which tolled the statutes of limitation while the class action was pending. 
 Bantolina v. Aloha Motors, Inc., 75 F.R.D. 26, 32 (D. Haw. 1977). 
 Restarting the limitation period does not prejudice the putative class
 members; they are free now, as they have been the entire time that the
 class action was pending, to initiate an action against defendants. And
 unlike dismissals or settlements of certified class actions, the denial of
 class certification has no effect on any putative class member's legal
 interests. Putative class members will only be prejudiced by not receiving
 notice that class certification is denied when they are reasonably relying
 on the pending class action to protect their interests. The court's
 discretion to provide notice of class certification denial to putative
 class members must be exercised only in that situation. Otherwise, the
 burdens, costs, and barratry concerns surrounding notice weigh more heavily
 than the need to protect an uncertified class. See, e.g., Maddox &
 Starbuck, 97 F.R.D. at 397; Elias v. Nat'l Car Rental Sys., Inc., 59 F.R.D.
 276, 276 (D. Minn. 1973); see also Simer, 661 F.2d at 665 (rejecting the
 "absolute application" of Rule 23(e) to provide notice in the
 precertification context because the high costs and time delay of notice
 "may be injurious to the interests of the putative class members"). 
 
 ¶ 26. In this case, there were no actions by the court that could
 have caused reasonable reliance by putative class members on plaintiffs'
 suit, and there is no evidence that any class members were in fact relying
 on the suit. There was never a decision in favor of class certification;
 the court twice denied class certification, under two different provisions
 of Rule 23. Neither the court nor the attorneys provided notice to
 putative class members of plaintiffs' class claim. Likewise, neither the
 court nor the attorneys provided putative class members with notice that
 plaintiffs had moved for class certification, either under the predominance
 theory or the limited-fund theory. Additionally, plaintiffs have not
 submitted any evidence that the court or any of the attorneys had been
 contacted about the litigation by putative class members, or that there are
 putative class members who actually relied on the litigation. The only
 evidence of reliance might be inferred from the media coverage of Dr.
 Chase, but no actual evidence was introduced.

 ¶ 27. Plaintiffs argue that the coverage of defendant's license
 suspension, Medical Practice Board proceedings, criminal charges, and civil
 litigation was sufficient to engender reasonable reliance on the class
 action by putative class members. We disagree with plaintiffs' contention
 that media coverage of defendants' legal troubles provides a sufficient
 basis for putative class members to reasonably rely on the action. This
 media coverage is particularly ill-suited for engendering reliance because
 none of it directly addressed plaintiffs' suit, and only a few newspaper
 articles mentioned the attempted class action. None of the coverage stated
 that a class action existed. Media coverage like this is not a sufficient
 basis for finding that putative class members will be prejudiced if they do
 not receive notice of denial of class certification. Because there was no
 risk of prejudice under these facts, ordering notice was an abuse of the
 court's narrow discretion. 
 
 ¶ 28. Because notice was not proper, we do not reach the appeals
 regarding the content of the notice, the manner of providing notice, or the
 cost allocation.

 Affirmed in part and reversed in part. 

 FOR THE COURT:



 _______________________________________
 Chief Justice

-------------------------------------------------------------------------------
 Footnotes

FN1. Although the superior court's entry order does not mention the
 battery and infliction-of-emotional-distress claims explicitly, the court
 seems to have dealt with the certification question as applied to
 plaintiffs' claims as a group. Because plaintiffs do not claim error with
 respect to this issue, and because it would not change the outcome of this
 appeal, we do not address it. See Banker v. Dodge, 126 Vt. 534, 537, 237
 A.2d 121, 124 (1967) (points not advanced on appeal not subject to review). 

FN2. Neither the Heerwagen court nor any of the line of cases preceding it
 offer any reason that a denial of class certification should be scrutinized
 more closely than a grant. The original case in this line, Abrams v.
 Interco, Inc., 719 F.2d 23, 28 (2d Cir. 1983), states only that "[a]buse of
 discretion can be found far more readily on appeals from the denial or
 grant of class action status than where the issue is, for example, the
 curtailment of cross-examination or the grant or denial of a continuance." 
 (Emphasis added.) The Abrams court based this statement on the fact that
 "[t]he courts have built a body of case law with respect to class action
 status." Id. We take no issue with the statement in Abrams, but we are
 not convinced that the subsequent mutation of the Abrams standard is well
 founded.

FN3. In view of our disposition of the Rule 23(b) question, we do not reach any
 of the claims of error involving Rule 23(a).

FN4. The forthcoming minor amendments to federal Rule 23, which will be
 effective December 1, 2007, do not alter Rule 23(b) in any material
 respect. See Committee Note, F.R.C.P. 23, Order of April 30, 2007, U.S.
 Order 07-30 (changes to Rule 23 "are intended to be stylistic only").

FN5. See also Birmingham Steel Corp. v. TVA, 353 F.3d 1331, 1339 (11th Cir.
 2003); Culver v. City of Milwaukee, 277 F.3d 908, 914-15 (7th Cir. 2002);
 Crawford v. F. Hoffman-La Roche Ltd., 267 F.3d 760, 764-65 (8th Cir. 2001);
 Diaz v. Trust Territory of the Pac. Islands, 876 F.2d 1401, 1408, 1409 (9th
 Cir. 1989); Shelton v. Pargo, Inc., 582 F.2d 1298, 1315 (4th Cir. 1978);
 Pearson v. Ecological Sci. Corp., 522 F.2d 171, 177 (5th Cir. 1975).